J. W. STACY, Nan Stacy, and The Great Wall of China
Restaurant, Inc. *v.* Hsi-Chi LIN

CA 90-188                                    806 S.W.2d 15

Court of Appeals of Arkansas
Division I
Opinion delivered March 20, 1991

*Lyons & Emerson*, by: *Jim Lyons*, for appellants.

*Barrett, Wheatley, Smith & Deacon*, by: *Berl A. Smith*, for appellee.

MELVIN MAYFIELD, Judge. The appellants J.W. Stacy, Nan Stacy, and The Great Wall of China Restaurant, Inc. appeal a judgment of the chancery court that granted specific performance of a contract for the sale of The Great Wall of China Restaurant, Inc. for a price of $40,000.00, and awarded appellee Hsi-Chi Lin damages in the amount of $9,451.00 and attorneys fees.

On September 8, 1989, appellee filed a complaint alleging that on or about August 18, 1989, he entered into a contract with the appellants to purchase the business known as The Great Wall of China Restaurant; that pursuant to the contract, appellee paid appellants $2,000.00 earnest money; that the contract provided that the balance of $38,000.00 was to be paid on August 31 or September 1, 1989; and that on September 1, 1989, appellants refused to accept the balance owed and refused to consummate

the sale of the business. Appellee asked that the court grant specific performance of the contract and award damages for "incurred expense and damage as a result of defendants' failure to timely perform." Appellants answered denying that a binding contract existed between the parties, but alleging in the alternative that should the trial court find a binding agreement was executed it should be for $80,000.00. On September 20, 1989, appellee filed an amended complaint alleging that because of a lease assignment executed by appellants to the appellee on August 28, 1989, he was entitled to possession of the premises upon which the business was located.

There was evidence at trial that two sets of documents were executed by the parties concerning the sale of the business and that each set consisted of two separate documents, one in English and the other in Chinese. (Mr. Lin and Mrs. Stacy speak English and Chinese; Dr. Stacy speaks only English.) Mrs. Stacy testified that her husband wrote the initial document on August 18; that she copied it in Chinese; and that each document was signed on August 18. Under the terms of that agreement, the purchase price was $80,000.00. Dr. Stacy testified that when the appellee came to the house on August 18, it was clearly understood that the appellee was making an offer of $80,000.00 and that half would be paid "above the table" and half "under the table."

On August 27, 1989, the second set of documents was prepared and signed. The English version of the document, signed by Dr. J.W. Stacy, Nan Stacy, and Hsi-Chi Lin, was attached to appellant's complaint and introduced into evidence. It states as follows:

BUSINESS:: The Great Wall of China Restaurant, Inc.
Owners: Dr. J. W. Stacy and Mrs. Nan Stacy
Location: 1509 Market Place, Jonesboro, AR 72401
Buyer: Mr. Hsi-Chi Lin

Today, August 18, 1989, Mr. Lin gives as ernest money $2,000.00 for purchase of the business for $40,000.00. The business consists of various equipment and fixtures recorded in a list. The purchase price excludes inventory on hand at date of sale.

The deposit of ernest money will be forfeited by Mr. Lin if

> he decides not to buy the business. This deposit guarantees that the owners of the business will not sell the business to anyone other than Mr. Lin.
>
> The balance of $38,000.00 will be paid on August 31 and/or Sept. 1, and at that time Mr. Lin will own the business completely.

The list of the various equipment and fixtures referred to above, signed by Dr. Stacy and the appellee, was not attached to the complaint but was introduced into evidence.

The appellee testified that the first set of documents represented an agreement to purchase the restaurant and an employee house for $80,000.00; but they changed the "deal" and the second set of documents constituted an agreement to purchase the business alone for $40,000.00. The appellants denied the house was included in either agreement and they testified the purchase price was always $80,000.00. Dr. Stacy testified the $40,000.00 agreement was written because he was afraid appellee might cause Mrs. Stacy to go through with a sale in which half of the purchase price was paid under the table, and he did not want appellee carrying around something which said the sale had been for $80,000.00; that would look bad to the "IRS."

On August 28, 1989, the appellants assigned to the appellee the lease of the land on which the restaurant was located. Dr. Victor Stepka, one of the owners of the land, testified that he, the appellants, and the appellee signed an addendum to the lease assigning it to the appellee. Stepka also testified he collected from the appellee for the September, October, and November rent. The record also contains a letter dated August 18, 1989, from Dr. Stacy to Dr. Stepka which states that "Nan has found a buyer for the restaurant"; that the last time the lease was renewed "we indicated that we would probably sell the restaurant before the lease expired"; and "we agreed that the buyer who assumed the duration of the lease would maintain continuity of the restaurant operation." The letter also stated that appellee had demonstrated he had enough operating capital to continue the restaurant operation without interruption; that appellee was familiar with the restaurant's operation because he worked "a stint here" two years ago; that appellee had arranged for support personnel to arrive in Jonesboro on September 1 to begin working in the

restaurant; and that appellee intends to retain the main chef.

Based upon the evidence and exhibits introduced at trial, and after reviewing briefs submitted by the parties, the trial court made specific findings of fact and conclusions of law in a letter opinion dated November 22, 1989, which was later incorporated by reference into the judgment of the trial court. The court specifically found that the original purchase price was for $80,000.00, which included a house that was appraised at $40,000.00, but that the price was reduced to $40,000.00 for the restaurant without the house. The court also found that the sale of the established and ongoing business constituted a sale subject to specific performance, and that the appellee was entitled to damages in the amount of $9,451.00.

The appellants first argue the trial court erred when it ordered specific performance of a contract for the sale of personal property. Appellants contend the subject matter of the alleged contract was the operational equipment of the business known as "The Great Wall of China Restaurant" and that there was no proof that it was unique.

■ Equity will not enforce by specific performance a contract relating to personalty unless special or peculiar reasons exist which make it impossible for the injured party to obtain relief by way of damages in an action at law. *Morris* v. *Sparrow*, 225 Ark. 1019, 287 S.W.2d 583 (1956). However, in *Chamber of Commerce of Hot Springs* v. *Barton*, 195 Ark. 274, 112 S.W.2d 619 (1937), the court held that specific performance for the sale of personal property may be decreed under proper conditions. The *Barton* case involved the sale of a radio station; specific performance was allowed by the trial court; and this was affirmed on appeal in an opinion which stated:

> A judgment for a bit of lumber from which a picture frame might be made and also for a small lot of tube paint and a yard of canvas would not compensate one who had purchased a great painting.

> By the same token Barton would not be adequately compensated by a judgment for a bit of wire, a steel tower or two, more or less, as the mere instrumentalities of KTHS when he has purchased an organized business,

including these instrumentalities, worth perhaps not more than one-third of the purchase price. Moreover, he has also contracted for the good will of KTHS which is so intangible as to be incapable of delivery or estimation of value. So the property is unique in character and so far as the contract is capable of enforcement the vendee is entitled to relief.

195 Ark. at 286.

The appellee has also cited the case of *Cochrane* v. *Szpakowski*, 355 Pa. 357, 49 A.2d 692 (1946), which involved the sale of a restaurant and retail liquor business. In that case, the appellees argued that equity was without jurisdiction. The court affirmed the trial court's decree of specific performance on the following reasoning:

In the instant case, it is obvious that equity does have jurisdiction because a similar restaurant and liquor business to the one in question could not be purchased in the market, and therefore could not be reproduced by money damages. In this connection, the learned chancellor properly said: "The contract involved here is one for the sale of a certain restaurant and liquor dispensing establishment at a definite location, and the possession of the premises on which the same is located. There are no other premises nor is there any other restaurant which is exactly like the one involved here, and it would, for all practical purpose, be impossible for * * * [appellee] to prove what money he would lose if * * * [appellant] were permitted to breach this contract* * *.

49A.2d at 694. *Se also Madariaga* v. *Morris*, 639 S.W.2d 709 (Tex. Ct. App. 1982) (specific performance allowed for sale of business that made and sold Albert's Famous Mexican Hot Sauce). And in 81 C.J.S. *Specific Performance* § 81(b) at 903 (1977) it is said:

Specific performance of a contract of sale of personality may be available where the subject matter of the sale is a going business, such as an automobile agency, a dry cleaning business, a liquor business, or a restaurant business.

In the instant case, the parties executed a written contract to "purchase the business known as The Great Wall of China Restaurant located at 1509 Market Place Drive, Jonesboro, Arkansas." The contract states that the appellee gave earnest money for "purchase of the business" which deposit guaranteed that the owners would not sell "the business" to anyone else and after payment of the balance appellee will "own the business completely." Shortly after the contract was signed, the appellants executed an assignment to the appellee of the lease on the premises upon which the business was located, and the assignment (which was agreed to by the landlord) states appellee is "purchasing the business that operates on the leased premises." The testimony of Dr. Stacy refers to "the purchase of the restaurant" and buying "this business," and his letter to the landlord states that Mrs. Stacy has found a buyer for the restaurant who could continue it without interruption.

■■ We first point out that the evidence clearly shows that the contract to sell the business in this case involved an agreement to assign the lease of the real property upon which the business was located. In *Dickinson* v. *McKenzie*, 197 Ark. 746, 126 S.W.2d 95 (1939), the court allowed specific performance of an option to extend the time to cut timber. The court said that where land or "any estate or interest in land" is the subject of an agreement, the right to specific performance is absolute. Secondly, even if the contract in the instant case did not involve the transfer of a leasehold interest, we think it would be putting form over substance to say it involved only "the operational equipment of the business." Although it states that "the business consists of various equipment and fixtures recorded in a list," it is clear that the contract—not written by an attorney—was intended to provide for the sale of a "going business." Appellants argue that the cases relied upon by the appellee involved businesses that were in some manner "special" or "unique." However, those cases involved a radio station, a restaurant and liquor business, and a hot sauce business. The general rule as stated in C.J.S., *supra*, indicates that the sale of a "going business" may be subject to specific performance. The cases relied upon by appellee show that specific performance has been granted where the agreement to sell a "going business" included its good will "which is so intangible as to be incapable of delivery or estimation of value,"

*Barton, supra*; where there was the sale of a business "the value of which cannot be accurately determined in an action at law," *Cochrane, supra*; and where the "plaintiff would not be adequately compensated . . . by an award of money," *Madariaga, supra.*

█ In the instant case, Dr. Stacy wrote a letter to the agent for the owners of the building in which the restaurant was located and reported that the appellee would "maintain continuity in the restaurant operation" and that appellee "intends to retain main chef, Mr. Wang, whose cooking is so popular here in Jonesboro, in order to insure continuity." Obviously, Dr. Stacy recognized that the sale involved the "good will" of the business. It is argued that the appellee did not testify that the business was unique, but it is not clear from the record that appellee really understood the meaning of the word "unique." However, he did say he wanted to buy the business because he knew it "pretty good." There was also a great deal of evidence introduced in regard to the income and profit of the restaurant. We believe, under all the circumstances, that whether the court should have ordered specific performance of this contract to sell the Great Wall of China Restaurant in Jonesboro, Arkansas, was a question of fact for the chancellor to decide. And when we consider that the contract involved a lease of real property, the continuation of a restaurant under the same name, with the same popular chef, at the same location, and (as we will discuss) that it would be difficult to fix damages for a breach of the contract, we cannot say the judge's decision to grant specific performance was clearly erroneous.

Appellants next argue that the trial court erred in awarding appellee damages in the amount of $5,000.00 for the delay in obtaining possession of the business. The court also allowed appellee $4,451.00 for the three months rent he had paid on the building lease which had been assigned to him. Appellants do not argue that the rent award was erroneous. The trial judge's reasoning with regard to the $5,000.00 award is explained in his letter opinion as follows:

> (5) Plaintiff argues that he is entitled to damages in the amount of $21,700.00. He testified that he paid the owner of the property three months rent or a total of $4,451.00. He then took the tax return of defendants for

1988 and calculated their net profit for that year and testified that by reason of being deprived of the business for the three months just past that he has lost $17,250.00 in profit. In making these calculations, plaintiff did not take into consideration a number of factors. . . . There are so many variables in the calculation of his damages for lost profits that the Court is simply unable to arrive at a conclusion based upon what he estimates his damages to be. Plaintiff is entitled to recover damages from defendants because the time of performance has passed and he was ready to pay them the balance due under the contract and they refused to perform. He is certainly entitled to receive the sum of $4,451.00 for rentals. . . . Rather than speculate upon the lost profits, the Court finds the prudent course to take is to award damages based upon a reasonable percentage of the profit less taxes as reflected in the 1988 return of defendants, P-19. The Court concludes that a reasonable amount is the sum of $5,000.00. Plaintiff is, therefore, entitled to recover as damages from defendants the sum of $9,451.00.

Appellants cite *First Service Corporation* v. *Schumacher*, 16 Ark. App. 282, 702 S.W.2d 412 (1985), where we said that a party seeking to recover lost profits must present proof sufficient to remove the question of profits from the realm of speculation and conjecture. In the instant case, appellants point to the trial judge's finding that there are so many variables in the calculation of appellee's damages for lost profits "that the Court is simply unable to arrive at a conclusion" based upon what appellee "estimates" those damages to be. Of course, the difficulty in assessing damages is a reason for granting specific performance. However, in *McCoy Farms, Inc.* v. *J & M McKee*, 263 Ark. 20, 563 S.W.2d 409 (1978), the court said:

Although, strictly speaking, legal damages are not awarded when specific performance is decreed, a decree should, as nearly as possible, require performance in accordance with the terms of the contact, one of which is the date fixed by it for completion; and, when that date is past, the court, in order to relate the performance back to it, gives the complainant credit for any losses occasioned by the delay.

263 Ark. at 32-33. But in *Miller* v. *Estate of Dawson*, 14 Ark. App. 167, 686 S.W.2d 443 (1985), we said "the money payments to equalize losses occasioned by the delay have been referred to as 'equitable compensation,' and are to be distinguished from damages awarded for breach of contract." We cited *Loveless* v. *Diehl*, 236 Ark. 129, 364 S.W.2d 317 (1963), where, as in the instant case, the seller remained in possession of the premises during the period of delay in performance, and we summarized the holding in *Loveless* as follows:

> In ordering specific performance of the contract the chancellor awarded the purchaser the fair rental value of the land occupied by the seller during the period of delay. On appeal the Supreme Court declared that the chancellor was correct in charging the seller with the rental value of the land where he had retained possession beyond the closing date but should have gone further and charged the purchaser with interest at the legal rate upon the unpaid portion of the purchase price in the same period.

14 Ark. App. at 172.

We, therefore, believe that the trial court was in error in the instant case in attempting to award appellee damages based upon a percentage of lost profits. In both *Loveless* and *Miller*, it was held that where specific performance is granted the purchaser is entitled to damages for delay in obtaining possession of the premises based upon the fair rental value of the property; however, those cases also hold the purchaser must be charged with interest at the legal rate upon any unpaid portion of the purchase price. "To hold otherwise would give the purchaser the use of both the land and the money during the entire period of delay." *Miller*, 214 Ark. App. at 173. As was done in *Loveless* and *Miller*, we think the instant case must be remanded for the amounts of the rental value and interest to be determined "so that the account may be stated in accordance with this opinion and a final decree entered." *Id.*

Finally, appellants contend the trial court erred when it refused to allow Dr. Stacy to testify that appellee's attorney called Dr. Stacy on Tuesday, September 5, 1989, and said appellee would pay $80,000.00 for the restaurant. At trial, during direct examination, Dr. Stacy testified that on Friday afternoon,

just prior to September 5, appellee's attorney had called him and asked whether Dr. Stacy was willing to accept a cashier's check in the amount of $38,000.00 as payment for the restaurant. Dr. Stacy testified that his response was "categorically no"; that the price under discussion from the very beginning was $80,000.00, not $40,000.00. Dr. Stacy said that appellee's attorney then said he would get back with Dr. Stacy and that he had done so with the call that Stacy received on Tuesday, September 5.

At trial, appellants' counsel then asked Dr. Stacy:

> Okay. And, during that conversation tell us what he said concerning Mr. Lin's willingness to pay.

Appellee objected on the basis that the conversation was an offer to compromise and settle and was not admissible. The trial court sustained the objection. At that time appellants made the following proffer: When appellee's counsel called, counsel said appellee wanted "to go ahead and buy the restaurant for $80,000.00," and Dr. Stacy's response was that the probability of selling to the appellee was nearly zero because of the appellee's actions on Friday, September 1 in which appellee tried to get the restaurant for $40,000.00.

Appellants cite *Missouri Pacific Railroad Co.* v. *Arkansas Sheriff's Boys' Ranch*, 280 Ark. 53, 655 S.W.2d 389 (1983), and argue the trial court erred in not admitting this evidence because it was not an offer to compromise, but even so, (1) the evidence was admissible as relevant to the reasonableness of a $40,000.00 purchase price; and (2) was admissible for impeachment purposes to show appellee's claim that the parties agreed upon a value of $40,000.00 was false.

We first note that even if evidence is improperly excluded, error is no longer presumed prejudicial, and unless the appellant demonstrates prejudice accompanying error, we do not reverse. *Peoples Bank & Trust Co.* v. *Wallace*, 290 Ark. 589, 721 S.W.2d 659 (1986). *See also* Ark. R. Evid. Rule 103(a) (no error in admitting or excluding evidence unless a substantial right of a party is affected).

So, even if appellants are correct in the contention that the evidence was admissible to show that a $40,000.00 purchase price was unreasonable, we do not see what difference it makes

since inadequacy of consideration will not preclude a contract between the parties. *Landmark Savings Bank* v. *Weaver-Bailey Contractors, Inc.*, 22 Ark. App. 258, 739 S.W.2d 166 (1987). And as to impeachment, we cannot say that the statement made in appellants' proffer was inconsistent with any statement made by the appellee at trial. At trial appellee testified that the initial agreement for $80,000.00 included the restaurant and a house, and the later agreement for $40,000.00 was for the restaurant only. We simply do not know from appellants' proffer whether the offer to "go ahead and buy the restaurant for $80,000.00" included the house or not.

Therefore, on the record before us, we are satisfied that appellants were not prejudiced by the exclusion of the proffered testimony.

Affirmed as modified and remanded.

ROGERS and DANIELSON, JJ., agree.