Paul B. SONNY v. BALCH MOTOR COMPANY

CA 94-1425                                        917 S.W.2d 173

Court of Appeals of Arkansas
En Banc
Opinion delivered March 13, 1996
[Petition for Rehearing denied April 17, 1996.*]

---

*Wallace, Hamner & Adams*, by: *Dale E. Adams*, for appellant.

*Anderson & Kilpatrick*, by: *Mariam T. Hopkins*, for appellee.

JOHN B. ROBBINS, Judge. Appellee Balch Motor Company (Balch) sued appellant Paul B. Sonny and his wife for an unpaid bill owed for repairs to Mr. Sonny's car. Mr. Sonny counterclaimed, alleging malicious prosecution and abuse of process in connection with Balch's unsuccessful attempt to have Mr. Sonny prosecuted for theft of services. After a jury trial, the jury found in favor of Balch in the amount of $871.13, and against Mr. Sonny on his counterclaims. Mr. Sonny now appeals, arguing that the trial court erred in denying his motion in limine in which he sought to prevent Balch from introducing any evidence about a prior lawsuit between the parties. In addition, Mr. Sonny contends that Balch unconstitutionally used its peremptory strikes to exclude two black people from the jury. We find no error and affirm.

The evidence in this case shows that Mr. Sonny went to Balch on November 4, 1991, for the purpose of having repairs made to his Oldsmobile. Mr. Sonny testified that, after Balch had finished repairing his car, the cashier gave him a receipt which indicated that no amount was due. Mr. Sonny then drove away without paying any money for the repairs. He stated that he and Darrell Stockton, one of Balch's mechanics, had talked extensively about warranty coverage before Balch worked on the car. However, Mr. Sonny acknowledged that the Oldsmobile had approximately 83,000 miles on it at that time and he knew the car had only a 50,000-mile warranty. He also admitted that Mr. Stockton told him that it would cost an estimated $500.00 or $600.00 to repair his car.

Herman Anderson, a service supervisor for Balch, testified that subsequent to the initial estimate he informed Mr. Sonny that additional problems were detected and it would cost a total of $894.00 to repair the car. Mr. Anderson stated that Mr. Sonny told him to go ahead with the work, and that upon com-

pletion of the work the amount due was $871.13. When asked about the document that indicated a zero balance, Mr. Anderson explained that this was not Mr. Sonny's bill, but rather an internal parts warranty ticket drawn up as a result of a faulty part Balch had received from the factory. Mr. Anderson noted that this document showed that there was another repair order. The other repair order was introduced into evidence, and showed a balance due of $871.13.

After Mr. Sonny had left the premises, Mr. Anderson noticed that Mr. Sonny's bill had not been paid and he immediately tried to contact Mr. Sonny about paying the bill. He testified that he eventually contacted Mr. Sonny by telephone four or five days later and told him that he owed the bill. According to Mr. Anderson, Mr. Sonny acknowledged the debt and agreed to come in and pay it. After several days Mr. Sonny had failed to contact Balch, so Mr. Anderson called him again. At this time Mr. Sonny denied that he owed anything for the repairs.

On November 25, 1991, counsel for Balch mailed a demand letter to Mr. Sonny urging him to pay the $871.13 debt. The letter stated that if Mr. Sonny failed to arrange payment within thirty days, a civil suit would be filed against him. Less than ten days later, agents for Balch decided to go to the prosecutor and attempt to have Mr. Sonny arrested for theft of services. Based on an affidavit made by John Hodges, Balch's service manager, a warrant was issued for his arrest. Mr. Sonny was arrested but the charges against him were dismissed for lack of probable cause.

Mr. Sonny's first argument for reversal is that the trial court erroneously admitted evidence of a prior lawsuit between the parties. John Noonan, director of service and parts for Balch, was permitted to testify that Balch had sued Mr. Sonny for $1600.00 about eighteen months prior to the November 4, 1991, incident. His testimony revealed that Balch had previously worked on Mr. Sonny's car and that Mr. Sonny's insurance company apparently sent him a check for about $1600.00 which was supposed to be applied on the repair bill owed to Balch. Mr. Sonny did not use the money to pay Balch, but upon being sued agreed to a consent judgment for $1600.00. According to Mr. Noonan, this judgment had not been satisfied at the time Balch

decided to pursue criminal sanctions against Mr. Sonny over the November 1991 incident.

Mr. Sonny now contends that the above evidence should have been excluded pursuant to Arkansas Rules of Evidence 404(b) and 403. Rule 404(b) provides:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Mr. Sonny asserts that the sole purpose for admitting evidence of the prior lawsuit was to show that he stole from Balch in the past and had probably done it again. He further argues that, if evidence of the prior lawsuit was not precluded by Rule 404(b), it should have been excluded by Rule 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Mr. Sonny submits that the probative value of the prior lawsuit, if any, was substantially outweighed by the danger of unfair prejudice.

The admission or rejection of evidence under Rule 404(b) and Rule 403 is left to the sound discretion of the trial court. *Jarrett* v. *State*, 310 Ark. 358, 833 S.W.2d 779 (1992); *Weger* v. *State*, 315 Ark. 555, 869 S.W.2d 688 (1993). On appeal, the trial court's ruling on admissibility will not be reversed absent a manifest abuse of discretion. *Id.*

At the pretrial hearing on Mr. Sonny's motion in limine, the trial court indicated that it would not have allowed evidence of the prior lawsuit if this case had involved only a dispute over the debt. However, it found the evidence to be relevant and admissible in light of Mr. Sonny's counterclaim for malicious prosecution. We agree. Lack of probable cause and malice

are essential elements of the tort of malicious prosecution. *Cordes* v. *Outdoor Living Center*, 301 Ark. 26, 781 S.W.2d 31 (1989). In the instant case, evidence of the prior lawsuit was not introduced to show that Mr. Sonny had stolen from Balch in the past. Rather, it was introduced to show Mr. Noonan's state of mind at the time he decided to pursue criminal charges against Mr. Sonny, and the trial court gave a limiting instruction to this effect. Moreover, evidence of the prior lawsuit was highly probative as to whether Mr. Noonan acted with malicious intent. Mr. Noonan testified that he did not attempt to bring charges against Mr. Sonny until he discovered that Balch had an unsatisfied judgment against Mr. Sonny for previous repairs, and this evidence is probative of his motive for bringing the charges. The trial court did not abuse its discretion in finding that this evidence was not precluded by Rule 404(b) and that the danger of unfair prejudice did not outweigh its probative force.

Mr. Sonny, a black man, raises as his remaining argument that Balch unconstitutionally exercised its peremptory strikes to exclude two black persons from the jury. After voir dire, Balch exercised three peremptory strikes, two of which removed the only two black jurors from the venire panel. Mr. Sonny objected and asked that Balch give a racially neutral explanation for the strikes. Balch responded by stating that it struck the black woman because she was young and tended to look down and not be responsive during her voir dire. Balch also explained that it struck the black man because he did not make eye contact during voir dire and because he was a backhoe operator and Balch was seeking jurors who were conservative and had business experience.

In *Batson* v. *Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court held that the Equal Protection Clause guarantees a criminal defendant that the State will not use peremptory challenges to exclude members of his race from the jury venire on account of race. This principle has been extended to protect private litigants in civil cases. *See Edmonson* v. *Leesville Concrete Co.*, 500 U.S. 614 (1991). In *Colbert* v. *State*, 304 Ark. 250, 801 S.W.2d 643 (1990), the Arkansas Supreme Court set out the following standards:

> We now hold that upon a showing by a defendant of

circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. If the state's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the challenges by the state.

The standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against a preponderance of the evidence. In every instance, however, the court shall state, in response to the defendant's objections, its ruling as to the sufficiency or insufficiency of the racially neutral explanation provided by the state.

The facts present in the instant case clearly raised an inference that Balch exercised peremptory challenges to exclude persons from the jury on account of race because it struck the only two black jurors on the venire panel. *See Colbert* v. *State, supra.* After this inference of racial bias was established, it was incumbent upon Balch to provide racially neutral reasons for the strikes. The trial court found the explanations given by Balch were sufficient, and we conclude that this determination was not clearly against a preponderance of the evidence. Balch argues that the black woman was the youngest member of the jury panel, which Mr. Sonny does not dispute, and that the black man operated a backhoe. Balch contends that this gave it the impression that they may be overly sympathetic to Mr. Sonny in a dispute against a car dealership. In addition, Balch asserted that both jurors were somewhat unresponsive to questioning, and the trial judge had the opportunity to observe the jurors during this voir dire. In *Hernandez* v. *New York*, 500 U.S. 352 (1991), the United States Supreme Court was faced with a *Batson* challenge and stated:

Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson*, the finding "largely will

turn on evaluation of credibility." In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." *Wainwright* v. *Witt*, 469 U.S. 412 (1985), citing *Patton* v. *Yount*, 467 U.S. 1025 (1984).

The trial judge in the instant case had an opportunity to judge the demeanor of Balch's attorney and decide whether the explanations given for the peremptory strikes were valid, and we affirm the judge's decision on this issue.

■ Balch has filed a motion seeking reimbursement from Mr. Sonny for its costs in preparing a supplemental abstract. We have reviewed Mr. Sonny's abstract and believe that it was sufficient to permit an understanding of the issues presented to the court for decision. Consequently, Balch's motion is denied.

Affirmed.

JENNINGS, C.J., and MAYFIELD, J., agree.

PITTMAN, ROGERS, and NEAL, JJ., dissent.

JUDITH ROGERS, Judge, dissenting. I respectfully dissent from the decision reached in this case with regard to the issue raised by appellant concerning the unconstitutional use of appellee's peremptory strikes excluding the only two black venire members from the jury. It is clear from the record, and both parties agree, that appellee struck the only two black jurors on the entire jury panel by the use of its peremptory strikes. Therefore, a prima facie case of racial discrimination was established and this point is not contested by the parties.

After it was established that a prima facie case of racial discrimination was established, the burden then shifted to appellee to provide a racially neutral explanation for the use of its challenges. The following occurred:

Ms. Hopkins: The young lady who was sitting on the

very front row, she was a young lady. We struck her because she was young. When she was asked various questions about what she thought, she tended to look down and be not responsive, and it was just a feeling that she did not — she was the young lady who was sitting on the front row.

Mr. Adams: Sitting on the front row, about number three or about the fourth.

Ms. Hopkins: And the other gentleman whose name was —

Mr. Adams: It was the black guy on the back row, Stewart.

Ms. Hopkins: Stewart.

Mr. Adams: Right there, sir.

Ms. Hopkins: Yeah. And the other gentleman, Mr. Stewart — Well, there are two gentlemen we struck. One gentleman was because he knew Mr. Wallace and that's the reason why we struck that — I mean, that lady that we struck. An the other gentleman we struck was Mr. Stewart. And Mr. Stewart was also — my impression of him was the same as the others. He did not make eye contact with me when I was — during the process of voir dire; as, for instance, the two ladies that were sitting next to him who are on the jury. Also, we were looking for, obviously very conservative jurors. We felt that with his background as a —

The Court: His background?

Ms. Hopkins: He's a backhoe operator. We thought with his background that he might feel sorry for Mr. Stewart [sic] and about the situation, and that he —

The Court: What's his background? What does a backhoe operator have to do with it?

Ms. Hopkins: A backhoe operator is somebody who operates —

The Court: I know what it is. What's it have to do with a

master cylinder or striking?

Ms. Hopkins: Your Honor, we just thought that his background, we tended to try and pick people who have been in business, or business oriented, and we wanted to be very conservative.

The Court: Okay. Well, okay. Well, I think that —

Ms. Hopkins: And we just did not feel like that the background —

Mr. Adams: Judge, I don't think the reasons she articulated are sufficient.

The Court: Oh, I understand them, and you have made your record and I think she has.

In *Cleveland* v. *State*, 318 Ark. 738, 888 S.W.2d 629 (1994) the Supreme Court set out the following standards to follow:

Upon a showing by a defendant of circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. *If the state's explanation appears insufficient, the trial court must* then conduct a sensitive inquiry into the basis for each of the challenges by the state.

The standard of review for reversal of the trial court's evaluation must test whether the court's findings are clearly against a preponderance of the evidence. *In every instance, however, the court shall state*, in response to the defendant's objections, its ruling as to the sufficiency or insufficiency of the racially neutral explanation provided by the state. (Emphasis added.)

In this case, the trial court clearly did not state its rulings as to the sufficiency or insufficiency of appellee's explanations. In particular, the trial court made no finding with regard to the black female juror who was struck because she was "young" and "tended" to look down and not be responsive.

In the case of *U.S.* v. *Garrison*, 849 F.2d 103 (4th Cir. 1988), the court noted that the term "young" may be vague in some contexts. In the context of this case, I believe it is clear, without any inquiry by the court, that appellee's explanation that the woman was "young" was too vague to establish a racially neutral reason for its peremptory strike. There is no evidence in the record concerning the ages of the individual members of the jury nor did the court inquire as to the lady's age or what relevance that factor had in appellee's jury selection.

Also, the record reveals that the questions posed by appellee were to the entire jury panel. Of those questions, a few received responses by a limited number of venire members. The black female juror was not asked specific questions nor did the questions posed to the whole panel relate to her. In addition, it is clear from the record that there were many others on the jury who did not respond to the questions posed to the jury panel. Therefore, I find appellee's explanation that the black female juror was unresponsive inadequate.

With regard to Mr. Stewart, the black male juror, appellee explained that he did not make eye-contact and was a backhoe operator. Again, the record does not reveal, nor did the trial court inquire, if Mr. Stewart owned his own backhoe business. There is also no evidence in the record and the trial court failed to inquire whether other members of the jury who were selected had their own business or were employed. I believe that the reasons for the peremptory strike of Mr. Stewart were clearly suspect and insufficient; therefore, the court should have conducted a sensitive inquiry to determine the true basis for the strike.

Because the trial court failed to make findings, from all relevant circumstances, as to the sufficiency of appellee's racially neutral explanations, and to conduct a sensitive inquiry into the basis for *each* of the challenges by appellee, I believe that appellant's constitutional rights have not been protected and the trial court's error requires a reversal and retrial.

Pittman and Neal, JJ., join in this dissent.