# HUGH CHALMERS CHEVROLET-CADILLAC-TOYOTA, INC. *v.* Margaret Turner LANG

CA 95-424 928 S.W.2d 808

Court of Appeals of Arkansas
Division II
Opinion delivered September 25, 1996

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *William H. Edwards, Jr.* and *Derek J. Edwards*, for appellant and cross-appellee.

*David Hodges*, for appellee and cross-appellant.

JOHN F. STROUD, JR., Judge. This appeal and cross-appeal arise from a lawsuit filed by Margaret Turner Lang, appellee/cross-appellant, against Hugh Chalmers Chevrolet-Cadillac-Toyota, Inc., appellant, and General Motors Corporation, cross-appellee. The case was tried and submitted to the jury on interrogatories. The jury found Chalmers liable on theories of strict liability, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Lang was awarded

$37,500.00 in damages. General Motors was exonerated of any liability. Following the verdict the trial court held a hearing on the issue of attorney's fees and awarded Lang $18,500.00. This appeal and cross-appeal followed.

In January 1992, Lang purchased a previously owned 1991 Chevrolet Lumina from Chalmers. At the time of purchase, the automobile had been driven approximately 13,000 miles. It was manufactured by General Motors. In February 1992, it was destroyed by fire and portions of Lang's carport and house were damaged. On the day of the fire, Lang returned home from work and parked her car in her carport at approximately 4:00 p.m. At approximately 11:00 p.m. she heard a loud bang, and her neighbors informed her that her car and carport were on fire.

For reversal, appellant Chalmers argues: (1) that the trial court erred in denying the motion for directed verdict on the implied warranty theories, (2) that the trial court erred in granting Lang's request for attorney's fees, (3) that the trial court erred in overruling Chalmers' peremptory strike pursuant to a *Batson* challenge, and (4) that the trial court erred in denying Chalmers' motion for a mistrial based on reports of other engine fires that were the subject of a motion in limine.

Cross-appellant Lang argues: (1) that the trial court erred in overruling her peremptory strike pursuant to a *Batson* challenge, (2) that the trial court erred in denying her motion in limine and permitting reference to subsequent, irrelevant acts, and (3) that the jury's verdicts in favor of General Motors, cross-appellee, were not supported by substantial evidence.

We find merit in the arguments raised by both appellant Chalmers and cross-appellant Lang with respect to their efforts to exercise peremptory strikes in the jury selection process. We therefore reverse and remand on both the appeal and the cross-appeal. Moreover, because we are reversing the judgment based on the trial court's failure to excuse two jurors, we discuss only the points likely to arise at a new trial.

## APPELLANT CHALMERS' PEREMPTORY STRIKES

Lang is an African-American woman. Following voir dire, Chalmers exercised peremptory strikes against three African-American women. Lang challenged those strikes pursuant to *Batson v.*

*Kentucky,* 476 U.S. 79 (1986) and *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614 (1991). With respect to two of the three peremptory challenges, either Lang conceded that there was an independent, nondiscriminatory basis for the strike, or the trial court so determined. With respect to Margie Brown, the third juror, however, the trial court overruled Chalmers' peremptory strike. The trial court erred in doing so.

In *Batson,* the United States Supreme Court held that the Equal Protection Clause guarantees a criminal defendant that the State will not use peremptory challenges to exclude members of the defendant's race from the jury venire based solely on race. This principle has been extended to protect private litigants in civil cases. *Edmonson,* 500 U.S. 614; *see Wingate Taylor-Maid Transp., Inc. v. Baker,* 310 Ark. 731, 840 S.W.2d 179 (1992); *Sonny v. Balch Motor Co.,* 52 Ark. App. 233, 917 S.W.2d 173 (1996).

When a *Batson* objection is raised, the party making the objection must demonstrate a prima facie case that racial discrimination is the basis of a juror challenge. If the party is able to demonstrate a prima facie case, then the burden shifts to the party exercising the peremptory challenges to establish that the peremptory strikes were for racially neutral reasons. The trial court must then determine from all relevant circumstances the sufficiency of the striking party's explanation. If the party's explanation appears insufficient, then the trial court must conduct a sensitive inquiry into the basis for each of the peremptory challenges. *Sonny v. Balch Motor Co.,* 52 Ark. App. 233, 917 S.W.2d 173 (1996).

Chalmers does not challenge whether a prima facie case for discrimination was established; rather, it asserts error in the trial court's rejection of the reason proffered by Chalmers for the strike. The following exchange took place in pertinent part between the trial court and Chalmers' counsel:

> THE COURT: In view of our hearing before commencing voir dire and in light of the development in voir dire and your strikes, the Court will require the defendant to make some offer or showing of some independent reason for exercising your peremptory challenges to exclude the two female black American prospective jurors other than based on race.

[COUNSEL FOR CHALMERS]: Your honor, I think voir dire and the process goes not just to the questions asked by the lawyers, but also questions asked by the Court in qualifying these jurors.

The voir dire process extends not just to verbal responses but also visual clues, body language, general appearance of the witnesses.

. . .

I exercised my strikes based on the non–responsiveness of her attitude, failure to make eye contact during voir dire and appearance.

. . .

[THE COURT]: The reason stated by the defense for the exercise of the peremptory challenge of Ms. Brown certainly does not meet that standard, if there be a standard. I perceive there is some standard at least established by the Supreme Court, the U.S., as well as local, for reasons of race.

While I personally think there needs to be some preservation of the peremptory challenge, that feeling based on simply appearance and response or lack of response of a juror which could give one a strong feeling, justified or otherwise, whether or not they would or would not be a good juror, a fair and impartial juror, that alone does not come up to the standard, standards prescribed by the Court to justify and the Court so holds.

 The United States Supreme Court has provided guidance with respect to the second step of a *Batson* inquiry:

The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." . . .

The [Eighth Circuit] Court of Appeals erred by combining *Batson*'s second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, *i.e.*, a "plausible" basis for believing that "the person's ability to perform

his or her duties as a juror" will be affected. It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. ... At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge *may choose to disbelieve* a silly or superstitious reason at step 3 is quite different from saying that a trial judge *must terminate* the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

. . .

The prosecutor's proffered explanation in this case — that he struck juror number 22 because he had long, unkempt hair, a mustache, and a beard — is race-neutral and satisfies the prosecution's step 2 burden of articulating a non-discriminatory reason for the strike. "The wearing of beards is not a characteristic that is peculiar to any race." [Citation omitted.] And neither is the growing of long, unkempt hair. Thus, the inquiry properly proceeded to step 3, where the state court found that the prosecutor was not motivated by discriminatory intent.

*Purkett* v. *Elem*, ___ U.S. ___, ___, 115 S. Ct. 1769, 1771 (1995).

■ The reasons proffered by Chalmers' counsel for striking the prospective juror were that she was not responsive, she lacked eye-contact, and she was unkempt in appearance. These reasons are race neutral. They are not peculiar to any race, and they were sufficient to satisfy the second prong of *Batson*. The standard of review for reversal of a trial court's *Batson* ruling is whether the court's findings are clearly against the preponderance of the evidence. *Bradley* v. *State*, 320 Ark. 100, 896 S.W.2d 425 (1995). Here, the trial court's ruling was clearly against the preponderance of the evidence and prevented the court from taking the *Batson* inquiry to the third step in the process, which involves determining whether the opponent of the strike has carried the overall burden of proving purposeful discrimination. We therefore reverse and remand for a new trial on this basis in the direct appeal.

## CROSS-APPELLANT LANG'S PEREMPTORY STRIKES

Following voir dire, cross-appellant Lang exercised peremptory strikes against three white prospective jurors. Cross-appellee General Motors challenged those strikes pursuant to *Batson*. With respect to two of the three peremptory strikes, either General Motors withdrew the *Batson* challenge or the trial court determined there was an independent, nondiscriminatory basis for the strike. With respect to Charles Barfield, the third juror, however, the trial court denied Lang's peremptory strike pursuant to the *Batson* challenge. The trial court erred in doing so.

During voir dire of the prospective jurors, counsel for Lang asked the potential jurors how they felt about lawsuits and if anyone had a problem awarding damages to his client for a fair amount under the circumstances. The following exchange took place:

JUROR [BARFIELD]: How much?

[COUNSEL FOR LANG]: We're suing for in excess of $70,000. It will be between $70,000 and $80,000.

JUROR [BARFIELD]: It's a damage suit, then?

[COUNSEL FOR LANG]: It's a damage suit. We had the car which was—we bought it for about $13,000 and it was a total loss. We had repairs to the home. She was out of the home from February 26th till Good Friday and had to extensively remodel it. We're essentially asking you for the property involved, okay. We're not having pain and suffering or things like that. You see what I'm getting at? Do you have any problem with that and that situation?

JUROR [BARFIELD]: Do you know the reason for the question?

[COUNSEL FOR LANG]: I understand. I take it from that that you sort of feel like that if I had a sore neck and wanted a million dollars you would have some problems with it. But from what I stated, do you have any problems sitting as a juror in this case?

JUROR [BARFIELD]: I probably don't.

Counsel for Lang subsequently exercised a peremptory strike to excuse Mr. Barfield. Counsel for General Motors then chal-

lenged the strike pursuant to *Batson*, noting that three whites had been struck with peremptory challenges.

The following exchange took place in pertinent part between the trial court and counsel for Lang:

> THE COURT: While one might certainly infer from his question and response that he had some difficulties, as counsel put it, complaining of a sore neck and seeking a million dollars, he might have some difficulty for personal injury, pain and suffering or mental anguish, matters or elements of damage of that nature. But stated he would not have any difficulty in being fair and impartial in assessing, considering damages for loss of property.
>
> Again, the Court finds that that is not a sufficiently independent reason justifying peremptor[ily] excusing a prospective juror who is a white male along with a white defendant and corporate defendant who is representative or of the white race. So that challenge will be denied.
>
> . . .
>
> What is the ultimate make up of the jury, if you have your list there and I assume designated or know which is black, which is white? Is there an inference, any support to your allegation that he's striking whites and has that effectively increase[d] the black members of the jury?
>
> . . .
>
> [COUNSEL FOR LANG]: Four out of the 12 would be black, ....
> [T]he jury questionnaire for Barfield shows that he is 65, retired. ... He has never served as a juror before and he also ... has sued another party for loan default.

■ Lang argues that none of the three prongs of the *Batson* analysis were satisfied by the evidence, and therefore the trial court's denial of her peremptory strike of Charles Barfield was clearly against the preponderance of the evidence. The reasons asserted by Lang for striking this juror were that he seemed to be one of those people who had some reservations about lawsuits involving damages, he was an older man that was more conservative, he had never served on a jury before, and he had sued another party for loan default. These reasons are race-neutral. They are not peculiar to any

race, and they were sufficient to satisfy the second prong of *Batson.* We therefore agree with Lang that the trial court's finding that Lang did not provide a sufficiently independent, neutral basis for the peremptory strike of Mr. Barfield is clearly against the preponderance of the evidence. We find it unnecessary to discuss the first and third *Batson* prongs with respect to this juror, and we reverse and remand for a new trial on this basis in the cross-appeal.

### ISSUES LIKELY TO RECUR ON RETRIAL

Of the remaining issues raised on appeal and cross-appeal, only two are likely to arise again at retrial since the evidence presented at the second trial may well be different from the first. Both involve motions in limine.

■ Chalmers sought to exclude by a motion in limine reports regarding other engine-compartment fires. At the pretrial conference on the motion, the trial court directed the parties to avoid mentioning the evidence in opening statements until the court had a chance to rule on the motion. In connection with that tentative ruling, the trial court commented that as a guide there's got to be some similarity for engine-compartment fires to be relevant. On at least two occasions during the trial, the reports were mentioned and Chalmers sought a mistrial, which was denied by the court. Chalmers argues that the trial court erred in refusing to grant a mistrial on that basis. We do not address the mistrial issue, nor do we rule on the merits of the motion in limine, but we point out that it is incumbent upon the parties to obtain a definite ruling on the motion at retrial.

■ The second motion in limine sought to exclude any reference to Lang's statement in a discovery deposition that she had purchased another Chevrolet Lumina from Chalmers after the fire loss. Lang contended that the evidence was not relevant and that any probative value it might have would be substantially outweighed by the danger of unfair prejudice. The trial court denied the motion. It abused its discretion in doing so because any probative value the evidence might have is substantially outweighed by the danger of unfair prejudice. On retrial, reference to Lang's statement in this regard should be prohibited.

Reversed and remanded on appeal and on cross-appeal.

ROBBINS and GRIFFEN, JJ., agree.