David J. POTTER *v.* Margaret MAGEE

CA 96-1525 964 S.W.2d 412

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered March 18, 1998
[Petition for rehearing denied April 15, 1998.]

114

*Thomas A. Potter*, for appellant.

*Hart, Severns & Lynch, L.L.P.*, by: *Fredye Long Lynch*, for appellee.

ANDREE LAYTON ROAF, Judge. Attorney David Potter appeals a jury verdict finding breach of contract in his representation of appellee Margaret Magee and awarding her $2,000 in damages. On appeal, Potter contends that the trial court erred in excluding his testimony about the services he rendered to Magee. On cross-appeal, Magee asserts that the trial court erred in: 1) granting judgment on the pleadings on the issue of punitive damages; 2) excluding proffered evidence concerning Potter's prior conduct that was probative of his breach of fiduciary duty; and 3) failing to refer Potter to the Committee on Professional Conduct, and failing to order a larger monetary award as Rule 11 sanctions. We reverse on appeal and affirm on cross-appeal.

Margaret Magee decided to obtain a divorce and began calling attorneys in the Texarkana phone directory on Memorial Day in 1995, until she reached David Potter, who was working at his office. Potter agreed to see her that day. Magee claimed that she informed Potter her objectives were to obtain a divorce, obtain custody of her child, and to remain in the marital home as long as possible to save money. Potter agreed to represent Magee and required that she pay him $3,500 up front. Potter claimed that the money was a fixed fee for handling her divorce; Magee denied that any agreement was reached regarding how the money would be apportioned. Potter deposited the entire $3,500 paid by Magee on May 30, 1995, in his business account.

Potter filed Magee's divorce complaint two days later, on June 1, 1995, and per her instructions had her husband served on June 2, 1995, at 12:10 a.m. Potter requested a temporary hearing that was apparently set for June 8, 1995, but it conflicted with the schedule of Damon Young, the attorney for Magee's husband. Potter subsequently reached an agreement with Young whereby both parties could continue to live in the marital home, but Mr. Magee would be required to leave whenever Mrs. Magee was present. The parties apparently worked different shifts, and through this arrangement could share care and custody of their

thirteen-year-old son during the pendency of their divorce. According to Potter, this made a temporary hearing unnecessary.

However, the agreement broke down when Magee's husband changed the locks on the doors several days later. At that time, Potter referred Magee to a locksmith, prepared a motion for contempt, and renewed his efforts to secure a temporary hearing. As the weeks passed, Magee became dissatisfied with the agreement that Potter had made, and on July 5, 1995, she fired Potter. Magee then hired attorney Paul Dickerson, who, for a fixed fee of $1,500, completed her divorce.

Magee later hired Attorney Fredye Mac Long to attempt to recover a portion of the $3,500 that she had paid to Potter. In a letter dated October 10, 1995, Long demanded a refund of $3,100, which Potter resisted. Magee filed suit against Potter on November 27, 1995, alleging breach of contract and breach of fiduciary duty, and seeking in addition to contract damages, unspecified punitive damages, attorney's fees, costs, and interest. Potter counterclaimed for breach of contract, libel, slander, and intentional infliction of emotional distress, and in the same pleading, moved for Rule 11 sanctions. Potter alleged that the motivation for Magee's suit was Long's personal animosity toward him because Potter was representing Long's estranged husband in a bitter divorce action.

Magee later amended her complaint to allege negligence and gross negligence. Potter then twice amended his counterclaim, after the court's deadline for amending pleadings, to add a third-party complaint against Magee's counsel, praying that she and Magee be held jointly and severally liable for intentional infliction of emotional distress, libel, and slander. The third-party complaint contained numerous allegations of wrongdoing by Magee's counsel.

The trial court ultimately granted Magee's motions to strike both of Potter's amended pleadings as untimely filed and for failure to state a cause of action upon which relief could be granted. The court ordered the pleadings sealed.

Prior to the trial, the court awarded Potter partial judgment on the pleadings and dismissed Magee's claim for punitive damages. During the trial, the judge granted Potter's motion for directed verdict on the claims of negligence and gross negligence, leaving only Magee's breach-of-contract and breach-of-fiduciary-duty counts to be submitted to the jury. The jury found in Potter's favor in the breach-of-fiduciary-duty claim, but awarded Magee $2,000 for breach of contract.

## A. Direct Appeal

Potter argues that the trial court erred in excluding as cumulative his testimony during his case-in-chief regarding the exact nature of the services that he provided to Magee. Citing *Crockett & Brown, P.A. v. Courson*, 312 Ark. 363, 849 S.W.2d 938 (1993), which he claims stands for the proposition that an attorney discharged with or without cause may recover the reasonable value of his services to the date of discharge, he contends that it was vital for him to prove that he had earned the fee that he charged. Although Potter was called to testify in Magee's case-in-chief, he asserts that he was only allowed to properly account for 2.5 of the 21.85 hours that he expended in representing her.

During Potter's case-in-chief, in a proceeding conducted out of the presence of the jury, the trial court prohibited Potter from testifying about the terms of Magee's divorce settlement because it was not relevant to the action involving his representation of Magee. The court further complained that Potter was going over matters that had already been covered and stated, "I'm going to stop you if I think you are doubling up and just doing a repeat and you're boring the jury. I won't tell you again next time." The following colloquy regarding Potter's itemized billing statement ensued:

> THE COURT: All right. Let's get in. If you've got something new, this is your time to bring it up, and I don't have any problem with that. I understand you need to do that.
> MR. POTTER: Can I go into that —
> THE COURT: Let's get back —
> MR. POTTER: — A reasonable fee for what he's being — what he deserves —

THE COURT: You have already covered that numerous times already, back and forth. And that's why I kept, before and Ms. Long asking about first one thing and another. He kept on evading the question at the time. You went through that document there. You went through every bit before.

Ms. LONG: I'm going to object if you didn't designate it as an exhibit.

THE COURT: Well, if that's the same document we were looking at earlier, I think —

MR. POTTER: He testified on direct examination.

THE COURT: — He went through directly with every bit of that. She asked him about how he arrived and all this and that. And was subject to cross examination, every bit of it was. I think you're wasting everybody's time right now. With that admonition, though, I'm going to call them back in.

When the jury returned, Potter was only asked two questions about the services he rendered:

Q. David, I want you to look at this answer to your interrogatories. We provided an accounting of the time you had this case, and you charged at the rate of a hundred and fifty dollars ($150.00) an hour.

A. That's correct. And we didn't talk about everything else in here that goes into the total hours, describing the services I rendered, the actions I took, the time it took, and so forth. It's the day it occurred, what I did, and just tracks the services rendered.

Q. Based upon those services that you provided, what was the total amount that you collected at the Plaintiff's request?

A. Three thousand four hundred twenty-seven dollars and fifty cents ($3,427.50).

■ The Rules of Evidence favor admission of evidence; relevant evidence may only be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Ark. R. Evid. 403; *see, e.g., Gruzen v. State*, 267 Ark. 380, 591 S.W.2d 342 (1979). Taken as a whole, Potter's testimony during Magee's case-in-chief, Magee's own testimony, as well as the testimony of Damon Young and Paul Dickerson, was only sketchy at best as to the services he rendered. Potter's testimony, however, would have pulled this information together in a

coherent form which, even if cumulative, was not needlessly so because it was the essence of his case. *Childs v. Motor Wheel Corp.* 164 Ark. 149, 261 S.W. 28 (1924).

Additionally, not all of the proffered testimony duplicated testimony already presented. Potter's statement details seven office conferences and seven phone calls with Magee. Potter's testimony during Magee's case only substantively deals with one phone call and three office visits. Moreover, Potter's statement tends to refute Magee's testimony that Potter did not often return her phone calls.

■ ■ Exclusion of evidence is prejudicial where a substantial right of a party is affected. *Stacy v. Lin,* 34 Ark. App. 97, 806 S.W.2d 15 (1991). Screening of relevant evidence is within the sound discretion of the trial court and will only be reversed on appeal where there is a manifest abuse of discretion. *Sony v. Balch Motor Co.,* 52 Ark. App. 233, 917 S.W.2d 173 (1996). However, here the trial court prevented Potter from effectively presenting his case. Accordingly, we reverse the award of damages to Magee.

### B. Cross-appeal

On cross-appeal, Magee first argues that the court erred in granting judgment on the pleadings on the issue of punitive damages. Magee contends that the trial court improperly required that her allegations of fact satisfy the legal standard set forth in *South County Inc. v. First Western Loan Co.,* 315 Ark.722, 871 S.W.2d 325 (1994), that the tortfeasor acted with malice, intent to cause injury, or with conscious indifference such that malice may be inferred, when older cases such as *Wallace v. Dustin,* 284 Ark. 318, 681 S.W.2d 375 (1984), required only that she prove that Potter acted wantonly or with a conscious disregard for her rights. She contends that her factual allegations meet this standard.

■ In response, Potter contends that this issue is moot given the jury's determination that there was no breach of fiduciary duty. Under Arkansas law, a case becomes moot when any judgment rendered would have no practical legal effect on an existing legal controversy. *Dillon v. Twin City Bank,* 325 Ark. 309, 924 S.W.2d 802 (1996). Because we affirm the trial court's evi-

dentiary ruling in Magee's second point pertaining to her breach-of-fiduciary-duty claim, this issue is moot.

Magee's second argument is that the trial court erred in excluding proffered evidence concerning Potter's prior conduct that related to her cause of action for breach of fiduciary duty. In the course of her direct examination of Potter, Magee asked him about his dealings with an elderly Little Rock woman, with whom he had been involved along with two others in purchasing an apartment complex in Little Rock. Potter claimed that the partnership was short-lived and he ultimately bought out his partners' interests. Further, he denied that a local attorney had made a demand upon him alleging overreaching with respect to his dealings with the woman's money.

Potter moved *in limine* to have examination on this subject excluded, but the trial court only disallowed the testimony on the subject from witnesses other than Potter. The trial judge stated: "What I don't want to do is try this case on some side issue or something that doesn't have any bearing. I understand the rules about credibility and so forth and you're entitled to test the credibility of anyone. I don't want to get too far and get you all trying to bring in and try another lawsuit." The trial court ruled that he would not allow inquiry that would confuse the issue, but would allow Potter's credibility to be challenged if he made it an issue.

Relying on Ark. R. Evid. 403 and 404(b) and *Shelton v. State*, 287 Ark. 322, 699 S.W.2d 728 (1985), for the proposition that similar conduct in the past is admissible to prove intent or motive in the current course of conduct, Magee argues that the trial court should have allowed her to call a rebuttal witness, John Pickett, to testify that Potter had previously wrongfully refused to return money to a person with whom he had a fiduciary relationship. Alternatively, relying on dicta in *Kellogg v. State*, 37 Ark. App. 162, 827 S.W.2d 166 (1992), Magee argues that the witness should have been allowed to testify for purposes of impeachment by contradiction.

■ ■ Rule 403 states: "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Here, there was a very real danger that the proffered testimony would prejudice the jury with an assertion that Potter had tried to cheat an elderly lady and almost certainly confuse the issue under litigation. Screening of relevant evidence is within the sound discretion of the trial court and will only be reversed on appeal where there is a manifest abuse of discretion. *Sony v. Balch Motor Co.*, *supra*. We cannot say that the trial court committed a manifest abuse of discretion in excluding the evidence.

■ Magee's reliance on Rule 404(b) and *Shelton v. State*, *supra*, is similarly misplaced. Rule 404(b) allows an exception to the general rule that evidence of past wrongs is not admissible to prove character or show conformity therewith if the evidence is offered to prove motive or intent in the current course of conduct. In *Shelton*, testimony about a burglary committed just prior to an ambush of a police officer was deemed admissible. However, there was a close temporal nexus linking the two events, and the previous act explained the reason for the subsequent act. In the instant case, no such temporal nexus is apparent, and the two events are clearly unrelated.

■ ■ Magee also contends that the witness should have been allowed to testify for purposes of impeachment by contradiction. In *McFadden v. State*, 290 Ark. 177, 717 S.W.2d 812 (1986), the supreme court stated that Ark. R. Evid. 608(b) is restrictively interpreted and does not prohibit the introduction of extrinsic evidence of misconduct of a witness where the witness has testified on direct examination that he or she has not engaged in certain misconduct extrinsic to the offense charged. However, Potter's credibility was not the issue as Magee's counsel made plain in her argument to the court:

> I would like to renew my request to ask for punitive damages based on a course of conduct. I want to call John Pickett with respect to Mr. Potter's dealings with Ms. Weatherford. I am proffering his testimony to be that there was actually a lawsuit prepared to be filed against Mr. Potter based upon overreaching in line with the breach of fiduciary duty allegations — all of which is contrary to Mr. Potter's testimony.

Magee made it clear to the trial court that her reason for calling Pickett was to establish a course of conduct to justify punitive damages based on more than one instance of Potter committing a breach of fiduciary duty. Accordingly, the trial court correctly excluded this testimony as being more prejudicial than probative and as potentially misleading to the jury.

■ ■ Moreover, for extrinsic evidence of misconduct of a witness to be admissible, the alleged misconduct must be *extrinsic* to the offense with which the accused is charged. *McFadden v. State, supra*. In Magee's argument to the trial court, she urged that Pickett be called to testify so as to establish a course of conduct in order to justify her claim for punitive damages. The alleged prior bad act was therefore intended to prove what she believed to be an integral part of her case, despite the fact that summary judgment had been granted on the issue of punitive damages. For this reason as well, the trial court did not err in excluding Pickett's charges.

Magee finally argues the trial court erred in not referring Potter to the State Bar of Arkansas and in not ordering a larger monetary award as sanctions. Magee argues that because Potter's third-party complaint against her counsel was not well-grounded in law, Rule 11 sanctions were appropriate, and Potter and his attorney should be referred to the Committee on Professional Conduct. Magee argues that this court should fine Potter for embarrassing her attorney, in an amount sufficient to deter future conduct of this type. She also prays that this court refer Potter to the Committee on Professional Conduct.

Magee further contends that the $1,000 awarded pursuant to her Rule 11 motion was insufficient because $2,950 would have covered her actual billing. Additionally, she argues that $492 billed relative to her motion to compel discovery, and $300 incurred in a hearing to unseal the third-party complaint for this appeal should be added to the judgment.

■ Regarding Magee's first contention that this court should refer Potter and his attorney to the Committee on Professional Conduct, there is no requirement in the *Procedures of the Court Regulating Professional Conduct of Attorneys at Law* that a com-

plaint be filed by a court. *See* § 5A. Moreover, while Potter's amended pleadings made some rather nasty allegations, this court has no basis for determining whether they are true or false. The only thing that is certain is that the pleadings were untimely filed, and even then it was within the trial court's discretion to allow them to be filed if it found that it would serve the interest of justice to do so. *Harris Const. Co. v. Powers*, 262 Ark. 96, 554 S.W.2d 332 (1977).

 As to Magee's contention that the $1,000 in fees awarded pursuant to her Rule 11 motion was insufficient, neither she nor Potter have abstracted the judgment awarding the fees, and we are thus precluded from considering this issue. *McPeek v. White River Lodge Enters.*, 325 Ark. 68, 924 S.W.2d 456 (1996)

Affirmed on cross-appeal; reversed and remanded on direct appeal.

ROGERS, GRIFFEN, and NEAL, JJ., agree.

PITTMAN and AREY, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. I dissent because I do not agree that the trial judge abused his broad discretion in refusing to allow further testimony based on appellant's itemized billing statement. The billing statement constructed by the appellant was very lengthy. Appellant testified that he did not keep a time record of the case as it proceeded, and that the billing record on which his testimony was based was a reconstruction created after appellee brought the present action against him. Appellant wished to testify in detail concerning individual entries in the billing record. The trial judge refused to allow this, noting that appellant had already testified about the amount of time he spent on the case.

In all evidentiary matters, the trial judge must be afforded broad latitude because he or she alone is in the best position to decide what evidence would aid the jury and what would confuse the issues. *Firestone Tire & Rubber Co. v. Little*, 276 Ark. 511, 639 S.W.2d 726 (1982). Unless the trial judge is clearly wrong, we will not substitute our judgment for his or hers. *J.B. Hunt Transport, Inc. v. Doss*, 320 Ark. 660, 899 S.W.2d 464 (1995). Rule

403 of the Arkansas Rules of Evidence permits the trial judge, in the interest of the efficient administration of justice, to exclude relevant cumulative evidence upon considerations of undue delay and waste of time. Rule 403 also permits the trial judge to exclude relevant evidence where its probative value is substantially outweighed by the danger of misleading the jury. I would affirm because I believe that the testimony appellant wished to offer could reasonably be seen as both cumulative and misleading.

I respectfully dissent.

AREY, J., joins in this dissent.