Frances M. WATSON *v.* STATE of Arkansas

CR 91-247                                     825 S.W.2d 569

Supreme Court of Arkansas
Opinion delivered February 24, 1992

*McCullough Law Firm*, by: *R.S. McCullough*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y

Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Francis M. Watson, appeals from a conviction for first-degree battery which resulted in a sentence of fourteen years. The conviction stemmed from charges brought against the appellant for acts committed against Daniel Toric, age six, who was living with her at the time that his leg was severely burned. The leg was subsequently amputated below the knee. The appellant now appeals on three grounds: a) the circuit court failed to instruct the jury on lesser included offenses; b) the circuit court erred in forcing the defense counsel to make his *Batson* objection in front of the jury; and c) the circuit court erred in permitting hearsay testimony of a social worker.

We hold that there is merit to the appellant's second point, and we reverse and remand for a new trial.

Daniel Toric is the son of Shirley Toric, but was living with the appellant during the period of time in question. There was no formal arrangement such as an adoption or guardianship between the appellant and Daniel. Five other children and two grandchildren also lived with the appellant, who made ends meet with public assistance and food stamps.

On September 10, 1990, Daniel suffered severe burns to his left leg. The appellant and one of her daughters drove Daniel to the hospital emergency room, where he was diagnosed as having third-degree burns and a life-threatening condition. The leg was subsequently amputated below the knee. Daniel later testified that the appellant put his leg in a bucket of hot water, and because of this, his leg turned red and hurt. A social worker, Carol Maxwell, also testified that Daniel told her that the appellant put his leg in the hot water because he had been running in the house. There were other indications that Daniel had been beaten on his head and body.

The appellant denied any participation in the hot-water incident and testified that the act was the result of conduct by one of her sons, Alglister Cunningham, who had immersed the boy's leg. She also denied any other beatings. On October 29, 1990, the appellant and Cunningham were charged with first-degree battery and the appellant alone was charged with permitting child

abuse. The child-abuse charge was later dismissed, and this court affirmed the dismissal on appeal. *State* v. *Watson*, 307 Ark. 333, 820 S.W.2d 59 (1991).

Trial of the battery charge commenced against the appellant and Cunningham on March 18, 1991. During jury selection a black juror, Mrs. Williams, was peremptorily challenged by the state. The following colloquy ensued:

> DEFENSE ATTORNEY: And, Judge, I need to make a motion. I'm not sure if you want to do it at this point.

> THE COURT: What is it? Just go ahead. Just make it. What is it? Just make it.

> DEFENSE ATTORNEY: Judge, I think it's one that has to be made out of the hearing of the jury.

> THE COURT: Huh?

> DEFENSE ATTORNEY: It's a Batson type motion.

> THE COURT: Batson motion? Respond to it. Make your response from out there. Why did you excuse Mrs. Williams?

> MRS. LARUE: Your Honor —

> COURT REPORTER: Do you want it out here? I can't hear you.

> THE COURT: We'll do it out there.

> COURT REPORTER: Then say it where I can hear you.

> DEFENSE ATTORNEY: Judge, I think that's going to cause some problems if it's in front of the jury.

> THE COURT: Well, sure it does. But you make the motion. If you don't want to hear the motion —

> DEFENSE ATTORNEY: Well, Judge, there are a lot of motions — If we do that, then I'll have to make a motion for a mistrial.

> THE COURT: You can't have it both ways. We don't

have a sidebar. All right. Mrs. LaRue.

DEFENSE ATTORNEY: Note an objection to doing it in front of the entire jury panel.

THE COURT: Okay.

MRS. LARUE: Your Honor, in response to Mr. Marczuk's [sic] motion, the State excused Mrs. Williams as a result of the answer she gave Mr. McCullough during his questioning of her. We have also called Mrs. Williams to the rail in other trials before this Court and excused her as a result of those answers.

MR. FRAISER: As well as, your Honor —

DEFENSE ATTORNEY: I'm going to object, Judge. Mrs. LaRue is responding to the motion. Miss Bailey can no more speak on that issue than I could at this point. And Mr. Fraiser ought not be allowed — The State can take two bites at it.

THE COURT: Overruled. Go ahead.

MR. FRAISER: Your Honor, she served on a case less than two weeks ago. Both the Defense and the State accepted her. A review of this Court's records will show that in every single jury trial before this in this Court —

DEFENSE ATTORNEY: Judge, I'm going to object to that.

THE COURT: Just be quiet.

DEFENSE ATTORNEY: The Supreme Court says —

THE COURT: Just be quiet, Mr. McCullough.

MR. FRAIZER: In this Court that people of color, regardless of color, have sat on a jury. There's no showing by Mr. McCullough that we strike people based solely upon their skin color. And there are members of color, regardless of what color, seated on the jury hear [sic] today.

THE COURT: Anything else, Mr. McCullough?

DEFENSE ATTORNEY: Yes. We'd note again an objection to having done this in full display of the jury and the jury is, of course, privy to the conversation. And we'd move for mistrial.

THE COURT: On what grounds?

DEFENSE ATTORNEY: On the fact that it was not done sidebar or in chambers.

THE COURT: It doesn't have to, does it?

DEFENSE ATTORNEY: I think the Supreme Court says it does.

THE COURT: Does it?

DEFENSE ATTORNEY: I think Batson, U.S.A. versus Wilson which was decided by the Eighth Circuit Court of Appeals and went up to the United States Supreme Court and they denied cert. I think that indicates clearly that that's a determination to be made by the Court and solely by the Court outside the hearing of the jury.

THE COURT: I made it. Overruled. Go ahead. What else? Call two more jurors to the rail.

A jury was seated, and the jury convicted the appellant of the battery charge and sentenced her to thirteen years in prison and fiend her $10,000. The circuit court converted the fine to an extra year in prison for a total term of fourteen years.

## BATSON HEARING

█ The appellant raises an issue of first impression for this court. She questions whether she was entitled to have her *Batson* motion establishing a prima facie case for relief held outside of the presence of the jury. *See Batson* v. *Kentucky*, 476 U.S. 79 (1986). We believe that she was entitled to this and that it was prejudicial to the defense to require counsel to make the motion, argue it, and then have the state respond to it, all in the presence of the jury.

We have had an opportunity to discuss the *Batson* decision and procedure relating to it several times in the last six years. *See e.g., Pacee* v. *State*, 306 Ark. 563, 816 S.W.2d 856 (1991);

*Colbert* v. *State* 304 Ark. 250, 801 S.W.2d 643 (1990); *Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988); *Smith* v. *State*, 294 Ark. 357, 742 S.W.2d 936 (1988); *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987). We have specifically recognized that the Court declined to formulate procedures or implement *Batson*. *See, e.g., Colbert* v. *State, supra; quoting Batson*, 476 U.S. at 99. The upshot of this lack of direction has been that the states have been forced to chart their own courses in formulating procedures for the time, place, and manner of the *Batson* process.

Part of the problem has been that the *Batson* decision contemplates two determinations by the trial court. The defendant must first object to the prosecutor's peremptory challenges and establish a prima facie case of purposeful discrimination. The *Batson* Court carefully outlined what is necessary for the defendant to cross this threshold:

1. The defendant must show that he is a member of a cognizable racial group, and the prosecutor has exercised his peremptory challenges to remove from the venire members of the defendant's race.

2. The defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate.

3. The defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude venire members from the petit jury on account of race.

*Batson*, 476 U.S. at 96. The Court then stated that the combination of these factors in empaneling the jury raises the necessary inference of purposeful discrimination for the defendant to make a prima facie case.

Two factors to be considered as relevant circumstances were specifically mentioned by the Court. First, a pattern of strikes against black jurors in the particular venire might give rise to an inference of discrimination. Secondly, the prosecutor's questions and statements during *voir dire* and in exercising his peremptory challenges may support or refute an inference of a discriminatory purpose.

The trial court then decides whether a prima facie case has been made by the defendant. Once that showing is made, the burden shifts to the state "to come forward with a neutral explanation for challenging black jurors." *Batson*, 476 U.S. at 97. Following the neutral explanation by the state, the trial court must make a second determination, that is, whether the defendant has actually established purposeful discrimination.

But, again, the *Batson* Court was silent on the procedures that the states should use in implementing the decision. More precisely, the Court did not address whether the defendant has a right to have any part of a *Batson* objection heard outside of the jury's presence. It is clear, however, that in several post-*Batson* cases, the neutral explanation by the state has been given to the court *in camera. See, e.g., United States* v. *Thompson*, 827 F.2d 1254, (9th Cir. 1987), *United States* v. *Davis*, 809 F.2d 1194 (6th Cir. 1987), *cert. denied* 107 U.S. 3234 (1987); *United States* v. *Tucker*, 836 F.2d 334 (7th Cir. 1988); *Salazar* v. *State*, 795 S.W.2d 187 (Tex. Cr. App. 1990). The issue in those cases, however, was not the issue before us but whether the defendant and defense counsel were entitled to be present in chambers or whether the explanation could be heard *ex parte*.

In the colloquy that occurred at trial, the defense counsel tried to object and the trial court preempted him and turned immediately to the prosecutor for a neutral explanation, without deciding whether the appellant had first made a prima facie case:

> DEFENSE ATTORNEY: It's a Batson type motion.

> THE COURT: Batson motion? Respond to it. Make your response from out there. Why did you excuse Mrs. Williams?

What followed were several protests by defense counsel that the issue should not be heard in front of the jury, culminating in the following response from the prosecutor, Mark Fraiser:

> A review of this Court's records will show that in every single jury trial before this in this Court . . . In this Court that people of color, regardless of color, have sat on a jury. There's no showing by Mr. McCullough that we strike people based solely upon their skin color. And there are members of color regardless of what color, seated on the

jury hear [sic] today.

The circuit court's refusal to permit defense counsel's objection at sidebar or in chambers resulted in an argument between counsel over racism in front of the jury. The prosecutor argued forcefully that the defense counsel had accused the State of racism and denied the accusation.

For the circuit court to permit, and even instigate, such behavior with the jury present is unacceptable. There is no good reason for the objection or for the neutral explanation to be presented in front of the jury.[1] The reason for this is obvious: race is a volatile and combustible issue and an accusation of racism by one attorney against another could readily prejudice the venire members, who were of mixed color, for or against the accuser and his client. It would have been a simple matter for the circuit court to have heard the defense counsel's objection at sidebar and determined whether a prima facie case was established, but the court chose not to do this. We conclude that having the *Batson* objection and response aired before the jury was prejudicial to the appellant, and denied her due process of law. Ark. Const. art. 2, § 8; U.S. Const. amend. 14.

In holding as we do today, we do not foresee an administrative burden on the trial courts. There is no reason why the defense objection and the determination of a prima face case could not be made at sidebar, although the trial court, in its discretion, might well prefer to resolve the threshold issue in chambers and, assuming a prima facie case has been established, hear any neutral explanation from the state immediately thereafter.

Our holding today simply goes to the point that mandating defense counsel to make his *Batson* objection, which amounts to a charge of racism against the State, in front of the jury and then urging the prosecutor to respond was unduly prejudicial to the appellant and denied her a fair trial.

---

[1] In *Pacee v. State* 306 Ark. 563, 816 S.W.2d 856 (1991), the trial court retired to chambers to hear the state's neutral explanation. In *Mitchell v. State*, 295 Ark. 341, 750 S.W.2d 936 (1988) (C.J. Holt dissent), the state's explanation for why it struck a particular juror was given in sidebar conference.

## LESSER INCLUDED OFFENSES

■ Because we are remanding for a new trial, we will review the two additional points raised by the appellant. She first argues that she was entitled to instructions on the lesser included offenses of second and third degree battery. The appellant has failed to abstract these instructions and, ordinarily, we would decline to address the issue. *See Dollar* v. *State*, 287 Ark. 61, 697 S.W.2d 868 (1985). Nevertheless, in view of the remand we will consider the point raised.

■ Throughout the trial, the appellant maintained that she did not put Daniel's leg in the hot water and that she was in the kitchen when her son, Alglister, called out to her. In short, she placed the onus for any offense committed on her son. She further denied participating in other beatings. Because her position is one of complete denial of any culpable activity on her part, there is no rational basis for giving a lesser-offense instruction. *See Flurry* v. *State*, 290 Ark. 417, 720 S.W.2d 699 (1986); *Doby* v. *State*, 290 Ark. 408, 720 S.W.2d 694 (1986). The circuit court was correct in refusing to give the instructions requested.

## CONFRONTATION CLAUSE

■ The appellant also contests the hearsay testimony given by the social worker, Carol Maxwell, regarding why the appellant put Daniel's leg in the hot water. Again, the abstract is void of any objection made by the appellant to Ms. Maxwell's testimony before the trial court, and we will not consider an issue where the trial court has not had an opportunity to consider it first. *Forgy* v. *State*, 302 Ark. 435, 790 S.W.2d 173 (1990).

■ The appellant did state to the circuit court relative to the social worker's testimony: "We would not at this point wish to be deemed as having waived any confrontational things." The confrontation rights of the appellant under the Sixth Amendment were not violated in this case. We have held that when a declarant testifies at trial and is subject to unbridled cross examination, the Confrontation Clause is not violated by the admission of additional hearsay statements made by that declarant. *Cogburn* v. *State*, 292 Ark. 564, 732 S.W.2d 807 (1987); *citing California* v. *Green*, 399 U.S. 149 (1970). The declarant, Daniel, testified at trial and was subject to full and effective cross examination by the

appellant. The appellant's argument on this point is without merit.

Reversed and remanded.