Paul B. SONNY *v.* BALCH MOTOR COMPANY

96-384                                                      944 S.W.2d 87

Supreme Court of Arkansas
Opinion delivered April 28, 1997

*Wallace, Hamner & Adams*, by: *James R. Wallace* and *Dale E. Adams*, for appellant.

*Anderson & Kilpatrick*, by: *Mariam T. Hopkins*, for appellee.

RAY THORNTON, Justice. Balch Motor Company sued Paul B. Sonny for an unpaid bill for repairs to Mr. Sonny's car. Mr. Sonny counterclaimed for damages from Balch in connection with Balch's efforts to prosecute him for theft of services. The jury found in favor of Balch for car repairs in the amount of $871.13, and against Mr. Sonny on his counterclaims of malicious prosecution and abuse of process. On appeal to the Arkansas Court of Appeals, Mr. Sonny argued that the trial court erred in allowing the introduction of evidence about a prior incident between the parties, and contended that Balch's use of peremptory strikes to exclude two black people from the jury was unconstitutional. The Court of Appeals decided that the trial court did not abuse its discretion in allowing the introduction of evidence regarding the earlier incident and affirmed by a tie vote the trial court's decision that Balch's use of peremptory strikes did not violate Mr. Sonny's constitutional rights. *Sonny v. Balch Motor Co.*, 52 Ark. App. 233, 917 S.W.2d 173 (1996).

We granted Mr. Sonny's petition for review of the decision of the Court of Appeals because of the tie vote on the question of a violation of Mr. Sonny's constitutional rights. We conduct our review pursuant to Ark. Sup. Ct. R. 1-2(f) as though the case had originally been appealed to this court, and we conclude that the trial court's decision should be affirmed.

*Whether Introduction of Evidence of Prior Lawsuit was Error*

■ ■ While Mr. Sonny did not specifically seek a review of the Court of Appeals' decision relating to the introduction of evidence regarding the earlier lawsuit, we first address that issue because it was included in his original appeal. Mr. Sonny claimed that the evidence of the earlier lawsuit between the parties should have been excluded pursuant to Ark. R. Evid. 403 and 404. We will not reverse a lower court's determination regarding this evidentiary balancing of probative value against prejudice absent a manifest abuse of discretion. *Wallace v. State*, 326 Ark. 376, 379, 931 S.W.2d 113, 115 (1996); *Jarrett v. State*, 310 Ark. 358, 363, 833 S.W.2d 779, 781 (1992). After reviewing the record, we find that none of the evidence relating to the circumstances surrounding the prior lawsuit was used to prove that Mr. Sonny acted in conformity with the earlier incident in the circumstances at issue in this trial. Ark. R. Evid. 404. Rather, the trial court found the evidence to be relevant and admissible due to Mr. Sonny's counterclaim alleging malicious prosecution.[1]

We hold that the trial court's decision to admit the evidence of the earlier incident does not reflect a manifest abuse of discretion and affirm on this point.

*Whether Balch Unconstitutionally Used its Peremptory*

*Strikes to Exclude Blacks from the Petit Jury*

For his second point of appeal, Mr. Sonny claimed that Balch used its peremptory challenges at trial to exclude blacks from the petit jury in violation of the Equal Protection Clause of the Four-

---

[1] We find the following reasoning articulated by the Court of Appeals to be very helpful and appropriate: "In the instant case, evidence of the prior lawsuit was not introduced to show that Mr. Sonny had stolen from Balch in the past. Rather, it was introduced to show [Balch's] state of mind at the time [it] decided to pursue criminal charges against Mr. Sonny, and the trial court gave a limiting instruction to this effect. Moreover, evidence of the prior lawsuit was highly probative as to whether [Balch] acted with malicious intent. [Balch's representative] testified that he did not attempt to bring charges against Mr. Sonny until he discovered that Balch had an unsatisfied judgment against Mr. Sonny for previous repairs, and this evidence is probative of his motive for bringing the charges." *Sonny v. Balch Motor Co.*, 52 Ark. App. at 238, 917 S.W.2d at 176.

teenth Amendment as construed in *Batson v. Kentucky*, 476 U.S. 79 (1986).

■ In *Batson*, the United States Supreme Court held that the Equal Protection Clause of the United States Constitution forbids a prosecutor in a criminal case to use his peremptory strikes to exclude jurors solely on the basis of race. *Id.* at 84. In *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991), the Supreme Court extended its decision in *Batson* to private litigants who use peremptory challenges to exclude prospective jurors, and described its concern with racial bias in our legal system as follows:

> Race discrimination within the courtroom raises serious questions as to the fairness of the proceedings conducted there. Racial bias mars the integrity of the judicial system, and prevents the idea of democratic government from becoming a reality.

*Id.* at 628 (citations omitted). This extension of the principle that racial bias has no place in the courtroom is salutary, as any exclusion from jury service on the basis of race violates the equal protection rights of the challenged jurors. Discrimination in jury selection in a civil action on the basis of race harms the person excluded from service no less than exclusion from a criminal jury. *Id.* at 618.

The goal of fairness in jury trials is also enhanced by the venerable practice of peremptory challenges, which dates back beyond the founding of the Republic to origins in the common law. *Holland v. Illinois*, 493 U.S. 474, 481 (1990) (citing 4 W. Blackstone, *Commentaries* 346-48 (1769)); *see also Swain v. Alabama*, 380 U.S. 202, 215-18 (1965). The historical practice of allowing the litigant to strike jurors for any reason came into being for the purpose of fostering both the perception and the reality of an impartial jury. *Lewis v. United States*, 146 U.S. 370, 376 (1892); *Hayes v. Missouri*, 120 U.S. 68, 70-71 (1887). The rationale supporting this practice remains valid except where the constitutional principles articulated by *Batson* and its progeny are violated. *Edmonson v. Leesville Concrete Co.*, 500 U.S. at 619-22.

■ Eliminating racial discrimination in the selection of jurors and simultaneously protecting the practice of peremptory challenges addresses itself to the sound discretion of the trial court.

The basis for this deference is articulated in *Hernandez v. New York*, 500 U.S. 352 (1991), where the Court stated:

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. . . . [T]he state of mind of a juror . . . based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Id.* at 365 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985)). It is essential that trial courts charged with this responsibility be provided with clear statements of applicable principles of law. Recently, the Court has restated the principle that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 115 S.Ct 1769, 1771 (1995) (per curiam).

■ While the Supreme Court decisions from *Batson* to *Purkett* have provided an analysis of the constitutional principles to be followed, we have recognized a need for an orderly process for resolving the issues. We pointed out in *Watson v. State*, 308 Ark. 444, 825 S.W.2d 569 (1992), that *Batson* was silent on the specific procedures that the states should use in implementing the Court's decisions. We stated that "[t]he upshot of this lack of direction has been that the states have been forced to chart their own courses in formulating procedures for the time, place, and manner of the *Batson* process." *Id.* at 449, 825 S.W.2d at 571. We then proceeded in *Watson* to establish that it is reversible error to force the defense counsel to make his *Batson* objection in front of the jury, thereby assuring that the entire proceeding be treated with great sensitivity. *Id.* at 451, 825 S.W.2d at 573.

■ We adhere to the basic structure prescribed by the Supreme Court, and we have further developed specific procedures for our courts to follow when considering a *Batson* challenge. The first requirement of a *Batson* objection is to make a prima facie case of prohibited discrimination in a peremptory challenge. *Bradley v. State*, 320 Ark. 100, 107, 896 S.W.2d 425,

429 (1995).[2] If no prima facie case is presented, no neutral explanation is required. *Tucker v. State*, 313 Ark. 624, 629, 855 S.W.2d 948, 950 (1993) (affirming on other grounds the trial court's finding no *Batson* violation). When there is no challenge to whether a prima facie case has been made, but a race-neutral explanation is offered, the issue of a prima facie case becomes moot. *Cleveland v. State*, 326 Ark. 46, 49, 930 S.W.2d 316, 318 (1996) (quoting *Prowell v. State*, 324 Ark. 335, 345, 921 S.W.2d 585, 591 (1996)). As we further pointed out in *Bradley*, "[i]f the trial court finds that the defendant has made a prima facie showing, the burden shifts to the State to provide a racially neutral explanation." *Bradley v. State*, 320 Ark. at 108, 896 S.W.2d at 429 (citing *Batson v. Kentucky*, 476 U.S. at 97).

■ Failure to *require* an explanation to rebut a prima facie case of discrimination before allowing the exercise of a peremptory challenge is error requiring reversal. *Ward v. State*, 293 Ark. 88, 93-94, 722 S.W.2d 728, 730-31 (1987). When a racially neutral explanation is offered to rebut the prima facie case, the trial court shall then determine from all relevant circumstances the sufficiency of the explanation. *Colbert v. State*, 304 Ark. 250, 255, 801 S.W.2d 643, 646 (1990); *see also Tucker v. State*, 313 Ark. at 629, 855 S.W.2d at 950.

We have affirmed a trial court's decision that a racially neutral explanation was a sufficient basis for the peremptory strike without further inquiry, stating:

> Hence, we cannot say, under these circumstances, that the circuit court's acceptance of the prosecutor's justification was clearly contrary to the preponderance of the evidence. Accordingly, a further inquiry on the matter was not warranted. On this point, we note that *the appellant did not specifically ask the court to conduct a further inquiry.* Moreover, we are not certain that what transpired

---

[2] In *Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996), we outlined the requirements for establishing a prima facie case as follows:

> (1) showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) demonstrating total or seriously disproportionate exclusion of blacks from the jury, or (3) showing a pattern of strikes, questions or statements by a prosecuting attorney during voir dire.

*Id.* at 124, 913 S.W.2d at 267.

in the bench proceeding was not a sensitive inquiry. Both counsel were questioned by the court, statements were made, and the court made its finding.

*Hollamon v. State,* 312 Ark. 48, 54, 846 S.W.2d 663, 666 (1993) (emphasis added). This is in accord with our holding in *Colbert v. State,* 304 Ark. at 254-55, 801 S.W.2d at 646, where we stated that when the neutral explanation given by the State is sufficient, no sensitive inquiry is required.

These procedures have been well established in our case law and are consistent with the principles set forth in *Batson* through *Purkett.* When the party having the burden of moving forward declines to proceed further, the trial court decides whether a prima facie case has been made. If a prima facie case has been made, the court must require an explanation and then determine, considering the evidence and explanations presented along with its observations of the proceedings and such further inquiry as it deems necessary, whether the neutral explanations given are genuine or pretextual.

We have affirmed the use of peremptory strikes where two potential jurors were seen "mouthing words" to the defendant, *Cleveland v. State,* 326 Ark. at 50, 930 S.W.2d at 319, and where a venire member was "dozing" during voir dire, *Owens v. State,* 300 Ark. 73, 79, 777 S.W.2d 205, 208 (1989). Other courts have accepted the reasons given by Balch for the use of its strikes as racially neutral reasons. *See United States v. Ross,* 872 F.2d 249 (8th Cir. 1989) (accepting age and unemployment status as racially neutral reasons); *United States v. Garrison,* 849 F.2d 103 (4th Cir. 1988) (accepting age and demeanor during voir dire as racially neutral reasons); *People v. Mack,* 128 Ill.2d 231, 538 N.E.2d 1107 (1989) (accepting employment background as a racially neutral reason).

We note that the Eighth Circuit Court of Appeals considered an issue similar to the one before us in *McKeel v. City of Pine Bluff,* 73 F.3d 207 (8th Cir. 1996), where defendants had used two of their peremptory challenges to strike the two black jurors from the venire panel. The explanation offered was that one black juror was struck because she worked with mental-health patients, while

the other black juror was struck because "her facial expressions and body language indicated a hostility to defendants." *Id.* at 210. The court then pointed out that these explanations were accepted by the district court, and stated:

> The record shows that McKeel's counsel at no time offered or attempted to offer any argument or make any record that the proffered reasons were pretextual. . . . In fact, we have previously upheld findings by trial courts that opponents of peremptory strikes who made no objection or record with respect to pretext failed to carry their burden of persuasion to prove purposeful discrimination in the peremptory process.

*Id.; see also Williams v. Groose*, 77 F.3d 259 (8th Cir. 1996).

■ Our standard of review affords great deference to the trial court's exercise of discretion in determining discriminatory intent relating to the use of a peremptory strike, and we only reverse that decision if it is clearly against a preponderance of the evidence. *Prowell v. State*, 324 Ark. at 344, 921 S.W.2d at 591.

Applying these principles to the particular circumstances of this case, we note that Balch's use of two of its three peremptory strikes to remove the only two black jurors on the petit jury panel meets the requirements of a prima facie case, and that the trial judge so determined in requiring Balch's counsel to explain the strikes. At oral arguments, she responded to questions from the court that Balch was seeking a jury panel that was mature and business-oriented, and she had prepared a jury profile in which the one potential juror who was under the age of twenty-one years old would likely be peremptorily challenged as not meeting that profile. The attorneys also had information available from juror questionnaires, which included such information as age and occupation of the prospective jurors, but made no reference to race.

The *Batson* objection and the explanation offered by Balch for its peremptory challenges at the trial was as follows:

> Defense Counsel: Your honor, first of all there were only two blacks in this entire panel to start with out of some thirty people who were called. They were both seated. Now the Plaintiff/Counter Defendant has struck both blacks and I make a *Batson* challenge.

Plaintiff's Counsel: Your honor, we did not strike the black jurors because they were black, I can't even remember their names.

Trial Court: You are going to have to say why you struck them because you struck them at all.

Plaintiff's Counsel: The young lady who was sitting on the very front row was a young lady. *We struck her because she was young.* When we asked her various questions about what she thought, *she tended to look down and not be responsive.* It was just a feeling. The other gentlemen [sic] was Mr. Stewart. My impression of him was the same as the others we struck. *He did not make eye contact with me during the process of voir dire. We were also looking for very conservative jurors. We found that he was a backhoe operator. We thought that with his background he might feel sorry for Mr. Sonny. We wanted to pick people who were in business or business oriented and very conservative.*

Defense Counsel: I do not believe the reasons she articulated are sufficient.

Trial Court: I understand what you are saying but I think she has articulated sufficient reasons. Objection overruled.

(Emphasis added.)

Age and occupation are racially neutral criteria, and in the light of the circumstances of the trial, where Balch was seeking mature and business-oriented jurors, the explanation was rationally related to the trial. Also, in considering the explanations based upon juror demeanor, such as unresponsiveness, the trial court was in a good position to determine whether this reason was genuine or pretextual. *Hernandez v. New York,* 500 U.S. at 365. We note that after the explanations were given, Mr. Sonny did not seek to provide additional evidence, but simply asserted that the explanation was insufficient.

The trial court accepted Balch's explanation as sufficient and allowed the peremptory challenges. We give great deference to the trial court in making this determination. In light of the facts before us, we conclude that the decision by the trial court was not clearly against a preponderance of the evidence.

Affirmed.

GLAZE, J., not participating.