Clint LAMMERS *v.* STATE of Arkansas

CR 97-417                                                  955 S.W.2d 489

Supreme Court of Arkansas
Opinion delivered October 23, 1997
[Supplemental opinion upon granting of rehearing
January 8, 1998.]

*Green and Henry*, by *J.W. Green, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant Clint Lammers was tried and convicted of capital murder in the slaying of Lois Wallace, a clerk at a grocery store in Stuttgart. He was convicted at a jury trial and sentenced to life imprisonment without parole. He argues four points on appeal, none of which contains reversible error. However, pursuant to the provisions of Ark. Sup. Ct. R. 4-3(h), we have examined the complete record for any prejudicial error that was objected to below, but not argued on appeal. We have concluded that there was reversible error when the trial court ruled that appellant's peremptory challenge of a middle-aged white male juror violated the requirements of *Batson v. Kentucky*, 476 U.S. 79 (1986), and ordered the juror to serve over appellant's objection.

Appellant's conviction was based upon evidence that he and two accomplices, Sean Smith and Brandon Isbell, who were tried separately, planned to rob Goacher's IGA grocery store and shoot the clerk to eliminate her as a witness. They went to the grocery store on the morning of October 28, 1994, where they first purchased batteries and remained in the store while they discussed their next move. Isbell picked up a pair of gloves and went to the front of the store, while appellant and Smith remained in the back. Isbell had a gun with him. He went to the cash register to pay for the gloves and shot the clerk, Ms. Wallace, in the head. When they could not open the cash register, they grabbed some cigarettes and fled to appellant's home. They took the gun, cigarettes, batteries, and gloves to a shed near appellant's house, where they

hid the gun. They called police from appellant's house and turned themselves in. All three gave statements while in custody.

After the police arrived at the house, Smith told them what was hidden in the shed. The officers immediately conducted a warrantless search of the shed and found a .357 caliber revolver hidden under a stuffed animal and a .22 caliber handgun in a paper bag. They found the cigarettes, batteries, and gloves lying outside on the ground. Appellant argues that the confession and search were illegal, and that without this evidence, there was not substantial evidence to convict him.

■ Before we discuss the error upon which we reverse, or any of the other points on appeal, we must first consider his challenge to the sufficiency of the evidence. We do not consider trial errors until after we have considered arguments regarding the sufficiency of the evidence, *including that which perhaps should not have been admitted. Scroggins v. State*, 312 Ark. 106, 848 S.W.2d 400 (1993).

■ There was an abundance of evidence to support a conviction. Appellant's argument that the evidence was insufficient because some of it should have been suppressed is based upon a mistaken premise. *See Scroggins v. State, supra.* Further, this issue was not preserved for appeal because his motions lacked the requisite specificity. At the close of the State's case, appellant stated that he moved for "a directed verdict of dismissal based on the sufficiency of the evidence." He renewed his motion at the close of his case. We cannot consider this argument because his motions did not state "the specific grounds therefor." *Walker v. State*, 318 Ark. 107, 108, 883 S.W.2d 831, 832 (1994). A general motion such as the one made by appellant is not sufficient to apprise the trial court of the missing proof so that it can be made aware of any deficiency. *Id.* Therefore, the argument is procedurally barred from our review.

■ In capital murder cases, we are required by Ark. Sup. Ct. R. 4-3(h) to " . . . review all errors prejudicial to the appellant in accordance with Ark. Code Ann. § 16-91-113(a)." Pursuant to the requirements of this rule, we make our own examination of the record and reject or accept on their merits all objections made

at trial, whether or not argued on appeal, but we do not consider a matter in the absence of an objection. *Fretwell v. State*, 298 Ark. 91, 708 S.W.2d 630 (1996). We review prejudicial, erroneous rulings even when such objections are not briefed by either the appellant or the State. *Griffin v. State*, 322 Ark. 206, 909 S.W.2d 625 (1995). We have concluded that the trial court committed prejudicial error in denying appellant's peremptory challenge of Mr. Clifford Burdett on the basis of the principles established by *Batson v. Kentucky*, 476 U.S. 79 (1989).

We note that before Mr. Burdett was challenged, the selection of twelve jurors had been completed without an objection being preserved as to any peremptory challenge or dismissal for cause. However, the trial court determined that two alternate jurors should be chosen in the event that one or more of the jurors could not serve. Appellant, a seventeen-year-old white male, attempted to exercise a peremptory challenge of Mr. Burdett, and the prosecutor asked for a bench conference, arguing that appellant struck Mr. Burdett because he is a "white male of middle age." The following colloquy ensued:

> MR. J.W. GREEN, JR.: My client told me to strike him, Your Honor. My client sits here facing a possible death sentence. My client does not feel comfortable with this gentleman sitting as a juror. And in this particular case, I follow my client's recommendation.
>
> [A recess was taken in order for the court to review *J.E.B. v. T.B. ex rel. Alabama*, 114 S. Ct. 1419 (1994)]
>
> . . .
>
> MR. DITTRICH [PROSECUTOR]: . . . there have been a large number of middle age, or older, white males struck by the defendant regardless of the answers to their questions. And it is our position that a conscious pattern to strike those individuals. I realize J.E.B. versus Alabama does not deal with the age issue, but we would make both a gender and an age based discrimination argument.
>
> . . .

THE COURT: Well, for the record, we should note that Mr. Harris is on the jury, and he is thirty — in his thirties? Do you all have a questionnaire?

MR. DITTRICH: Mr. Harris is thirty-two years old, Your Honor — I'm sorry, Your Honor, forty-two. He was born in 1954.

THE COURT: Forty-two. And . . . let's see, Mr. Stovesand — Mr. Stovesand was struck by the defendant, and I know he is in his twenties. Mr. Winfrey was excused by the defendant, and he is in his fifties.

THE COURT: Ms. Sells was excused by the defendant. She is a white woman. Mr. Berry was seated on the jury. Do we know how old Mr. Berry is?

MR. DITTRICH: Mr. Berry . . . Let me look just a minute, Your Honor. . . .Mr. Berry is thirty-six years old. But I would point out for the record that Mr. Berry is an African-American.

The court then proceeded to inquire into the age of each of the white males who had been peremptorily challenged. Appellant's attorney asked whether the State's *Batson* challenge was based upon race, gender, or age, and the prosecutor replied that it was based upon all three. The court disallowed the peremptory challenge.[1] Appellant's attorney then explained his objection for the record as follows:

MR. J.W. GREEN, JR.: Your honor, the defendant's objection goes not only to the fact that he is a white man. It wouldn't make any difference if it was a white female. The defendant's objection goes to the fact — further to the fact that he did not

---

[1] The trial court's finding that seven out of nine strikes exercised by the defendant were against white males is factually incorrect. A careful review of the record reveals that in the selection of the twelve original jurors, appellant had peremptorily challenged three white females, two young white males, and four older white males. During the selection of alternates before Mr. Burdett had been chosen as first alternative, three white males and one white female had been struck by the court for cause, and the court had upheld the State's peremptory strike of a black male notwithstanding a *Batson* challenge.

None of appellant's peremptory strikes had been challenged during the selection of the first twelve jurors, and therefore no race-neutral or gender-neutral explanation was required to be given. However, a review of the record discloses that at least four of the peremptorily stricken white males had responded to questions disclosing (1) that a potential witness, the acting police chief David Cowart, was a client of the venireman, (2) an ambiguous or contradictory response as to whether the potential juror could presume innocence, (3) membership in the same church with the victim's sister, and (4) that the venireman worked with and saw the husband of the deceased every day.

feel comfortable with the answers that were asserted by Mr. Bur-
dett up there. The defendant is sitting here in a capital murder
case. His life is on the line. And he is exercising a peremptory
challenge that he thought, and believes that he has a right to
exercise. If it had been a black man, or if it had been a black
woman, if it had been a white man, or if it had been a white
woman, would the, what he perceived and what he heard from
where he sits, he would have excluded that person from the juror
— jury.

Although there was no finding by the court that this explanation
was pretextual, Mr. Burdett was seated on the jury without further
inquiry.

■ The threshold question is whether a prima facie case of
discrimination has been presented by the State. In *Mitchell v. State*,
323 Ark. 116, 913 S.W.2d 264 (1996), we articulated the require-
ments for establishing a prima facie case as follows:

(1) showing that the totality of the relevant facts gives rise to an
inference of discriminatory purpose, (2) demonstrating total or
seriously disproportionate exclusion of [the group in question]
from the jury, or (3) showing a pattern of strikes, questions or
statements by [the proponent of the strike] during voir dire.

*Id.* at 123-24, 913 S.W.2d at 268. By trying to discern a pattern,
the trial court followed the correct procedure in attempting to
determine whether a prima facie case had been established. How-
ever, its ruling was based upon a faulty premise, which was that
age can be a basis for a *Batson* challenge.

■ In *Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d
7 (1997), we approved the trial court's finding that no *Batson* vio-
lation existed when the proponent of the strike in question there
explained to the court that it was looking for mature, conservative
business people. We noted that age and occupation are neutral
criteria. *Id.*; *accord United States v. Ross*, 872 F.2d 249 (8th Cir.
1989); *United States v. Garrison*, 849 F.2d 103 (4th. Cir. 1988).
While we recognize that the United States Supreme Court has
expanded *Batson*, as provided in *Georgia v. McCollum*, 505 U.S. 42
(1992), and extended the principles to a consideration of gender,
*J.E.B. v. T.B. ex rel. Alabama*, 511 U.S. 127 (1994), it is obvious
from the record that the trial court's focus here was on the exclu-

sion of *middle-aged* white males, as it inquired into the age of each juror. Therefore, its ruling was in error.

■ Had there been a prima facie case, the court failed to properly apply the remaining parts of the *Batson* test. The explanation offered by appellant was both race and gender neutral.[2] There was no finding by the trial court that it was pretextual. When a racially neutral explanation is offered to rebut a prima facie case, the trial court shall then determine from all relevant circumstances the sufficiency of the explanation. *Colbert v. State*, 304 Ark. 250, 801 S.W.2d 643 (1990). This was not done; the trial court ended its inquiry after appellant's race-neutral explanation, and seated the juror over appellant's objection.

■ Mr. Burdett, who was originally the first alternate, replaced a juror before the trial commenced and participated in the decision. As appellant received a life sentence without parole, we cannot say this error was harmless. We pointed out the following in *Sonny*:

> The goal of fairness in jury trials is also enhanced by the venerable practice of peremptory challenges, which dates back beyond the founding of the Republic to origins in the common law. The historical practice of allowing the litigant to strike jurors for any reason came into being for the purpose of fostering both the perception and the reality of an impartial jury. The rationale supporting this practice remains valid except where the constitutional principles articulated by *Batson* and its progeny are violated.

*Sonny v. Balch Motor Co.*, 328 Ark. at 325, 944 S.W.2d at 90 (citations omitted). As there was no constitutional violation in appellant's peremptory strike, the trial court erred in overruling it.

We will address appellant's remaining points on appeal, as they are likely to arise on retrial. Prior to trial, appellant filed a motion to suppress evidence seized during the warrantless search

---

[2] With regard to the question whether appellant's peremptory strikes reflected a systematic exclusion of members of the white race, we note that following the seating of Mr. Perry, a black male, it appears that every potential black juror was either dismissed for cause by the court, or peremptorily struck by the State. Thus, there was no opportunity for appellant to exercise a peremptory challenge against any non-white person.

of a metal building located behind the duplex where he and his mother lived. In his motion, he contended that the search and seizure violated his Fourth Amendment rights because it was made "without the consent of the defendant or his mother, the other occupant of the premises and with the absence of any exigent circumstances to justify a warrantless search." The trial court denied the motion, finding that because neither appellant nor his mother had a property interest in the shed, he lacked standing to object to the search. The trial court was correct.

■ "The rights secured by the Fourth Amendment are personal in nature." *Littlepage v. State*, 314 Ark. 361, 368, 863 S.W.2d 276, 280 (1993) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)). Before a search can be challenged on Fourth Amendment grounds, the challenger must have standing. *Id.* To have standing, appellant must show that (1) he manifested a subjective expectation of privacy in the area searched and (2) society is prepared to recognize that expectation as reasonable. *Dixon v. State*, 327 Ark. 105, 937 S.W.2d 642 (1997).

The testimony at the suppression hearing revealed that appellant's mother had once rented the house to which the shed belonged from Ray Freeman. Mr. Freeman also owned the duplex that Mrs. Lammers was renting at the time of the offense, and it is located near the house and the shed. However, Freeman testified that the shed went with the house. After Mrs. Lammers moved out of the house and into the duplex, the house was sold, but Mr. Freeman reacquired it when the buyer was unable to keep up with the payments. He said that Mrs. Lammers had put a motorbike in the shed at one time and left it there when the property was sold, but that the buyer had taken the motorbike and sold it.

■ It is not clear from the testimony whether Freeman or the buyer owned the house at the time of the offense, but the following facts are clear: (1) neither appellant nor his mother owned or rented the house with the shed, at the time of the offense and (2) the duplex where appellant lived, while in close proximity to the house and the shed, was not a "common area," and each tenant was responsible for a fifty-foot lot that surrounded

each residence. It follows that appellant did not have a reasonable expectation of privacy in the storage building, as he neither owned nor rented the property. The trial court's decision that appellant did not have standing to object to the search is supported by a preponderance of the evidence, as presented in the suppression hearing.

Appellant next argues that the statement he made to police while in custody should have been suppressed because he did not knowingly and voluntarily waive his Fifth Amendment right to remain silent. Appellant contended in his motion to suppress that he did not knowingly, intelligently, or voluntarily waive his rights; that he was not properly or sufficiently advised of his rights; and that he was not capable of understanding those rights, due to his age and his mental and emotional state. However, the trial court's ruling stated that there was "no evidence whatsoever of involuntariness." It appears that appellant made an argument that his *waiver* was involuntary, but he received a ruling that his *statement* was not involuntary. The arguments are not the same.

In *Clay v. State*, 318 Ark. 122, 883 S.W.2d 822 (1994), we discussed the difference between the contention that a statement was made involuntarily and the contention that an accused did not knowingly and voluntarily waive his right to remain silent. The "voluntary statement" argument addresses whether the *statements* were made as the result of coercion. *Id.* at 129, 883 S.W.2d at 826. The "waiver of rights" argument focuses upon whether *the waiver* was made with a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," as well as whether the accused made the choice, "uncoerced by police, to *waive his rights*." *Id.*, 883 S.W.2d at 825-26 (emphasis added). We pointed out in *Clay* that while we sometimes do not take time to point out the distinctions between the two arguments, they are clearly different arguments. *Id.; see, e.g., Shaw v. State*, 299 Ark. 474, 773 S.W.2d 827 (1989) (reaching the waiver issue but not the voluntariness issue because the voluntariness argument had not been made to the trial court). It is incumbent upon a movant to obtain a ruling in order for his argument to be considered on appeal. *Foreman v. State*, 328 Ark. 583, 945 S.W.2d 926 (1997). Appellant should be mindful of the

distinction between the two arguments and should he make this argument at his retrial, he will need to obtain a specific ruling on either or both arguments if he wishes to preserve the issues for our review. *See Foreman v. State, supra.*

Appellant's final argument is that the trial court abused its discretion in denying his motion to recuse. Prior to trial, appellant filed a motion requesting that the trial judge recuse from the case because one of appellant's attorneys, J.W. Green, Jr., who was also Stuttgart City Attorney, had approved a charge of battery against the judge, resulting from an incident at a night club in Stuttgart. The Stuttgart Municipal Court had issued a warrant for the judge's arrest, but the charge was nolle prossed at the request of the alleged victim.

At a hearing, appellant noted that after the incident, the judge had recused from another case in which the defendant was represented by Mr. Green. After hearing the arguments, the judge declined to recuse, stating that he had no argument with Mr. Green, as he was only doing his job, and that he did not have any prejudice against appellant as a result of the incident in municipal court.

We see no evidence of bias in the record that would cause us to conclude that the trial court abused its discretion in declining to recuse. The mere presence of a complaint or suit against a judge, is not, by itself, a reason to require recusal. *Smith v. State,* 296 Ark. 451, 757 S.W.2d 554 (1988). When a party has acted contemptuously toward a judge, embroiling him in a personal dispute, or when a judge cannot lay aside attitudes toward individual practitioners, we have said that he should recuse. *E.g, Rosenzweig v. Lofton,* 295 Ark. 573, 751 S.W.2d 729 (1988); *Clark v. State,* 287 Ark. 221, 697 S.W.2d 895 (1985). There was no such showing here.

Bias is a subjective matter which is to be confined to the conscience of the judge. *Bradford v. State,* 328 Ark. 701, 947 S.W.2d 1 (1997). Unless there is an objective showing of bias, there must be a *communication* of bias in order to require recusal for implied bias. There is no such showing on the record before us in this appeal.

■ In summary, we determine that the trial court's error in not allowing appellant to exercise his peremptory strike against Mr. Burdett was prejudicial error requiring a new trial. We reverse and remand.

NEWBERN, GLAZE, and IMBER, JJ., dissent.

TOM GLAZE, Justice, dissenting. The majority court reverses this case on a *Batson* issue the trial court favorably decided in the State's favor. *See Georgia v. McCollum*, 505 U.S. 42 (1992); *Batson v. Kentucky*, 476 U.S. 79 (1986). In sum, when defendant Lammers peremptorily challenged venireman Mr. Burdett, the prosecutor objected that Lammers's strike was based solely on race, gender, and age. The prosecutor pointed out that of Lammers's nine peremptory strikes, seven were against white males. He also emphasized that, in making his strikes, Lammers's counsel announced, "It is widely known in the community that black individuals tend to be less severe than white people in criminal juries in Arkansas County." Considering Lammers's pattern of strikes and his discriminatory statement regarding race and gender when striking veniremen, I believe the trial court was correct in finding the State had shown a prima facie case of discrimination.

While the majority opinion seems to find fault with the trial court's reference to *middle-aged* white males, the record is clear that the judge's ruling dealt with gender and race.[1]

The Court in *J.E.B. v. T.B. ex rel Alabama*, 511 U.S. 127 (1994), extended the *Batson* principle to gender-based strikes, and the trial court here determined Lammers improperly utilized gender in striking white males. The trial judge then required Lammers to provide a gender-neutral explanation in striking Mr. Burdett. Lammers failed to do so, but instead he gave the following general, rather rambling, statement:

---

[1] THE COURT: All right. Well, for the record I will note that out of nine strikes exercised by the defendant, seven of them were against white males. Two were accepted, one white and one black. Only two of the nine strikes were against women. And under the ruling of *J.E.B.*, and in the absence of a better explanation or basis for the exclusion of Mr. Burdett, I will have to overrule the peremptory challenge under the law. Mr. Burdett will be our first alternate.

MR. J. W. GREEN, JR.: Your honor, the defendant's objection goes not only to the fact that he is a white man. It wouldn't make any difference if it was a white female. The defendant's objection goes to the fact — further to the fact that he did not feel comfortable with the answers that were asserted by Mr. Burdett up there. The defendant is sitting here in a capital murder case. His life is on the line. And he is exercising a peremptory challenge that he thought, and believes that he has a right to exercise. If it had been a black man, or if it had been a black woman, if it had been a white man, or if it had been a white woman, would the, what he perceived and what he heard from where he sits, he would have excluded that person from the juror — jury.

Lammers's foregoing statement merely conflicts with his earlier remarks and preconceived notions that white males are more severe than black males in criminal cases. And while Lammers mentions his case is a capital murder case, he made no suggestion that Mr. Burdett could not decide the case fairly. In fact, Lammers's statement made no specific reference to Mr. Burdett that could be categorized as a gender-neutral explanation for his striking Burdett.

In conclusion, I would not reverse the trial court's ruling on the *Batson* issue. The trial judge was correct in finding that the State made a prima facie case of discrimination, and that Lammers offered no articulate explanation for his peremptory strike of Burdett.

NEWBERN and IMBER, JJ., join this dissent.

## SUPPLEMENTAL OPINION GRANTING
## PETITION FOR REHEARING

### JANUARY 8, 1998

959 S.W.2d 35

*Green & Henry*, by: *J.W. Green*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. In its original opinion, this court considered appellant Clint Lammers's four points on appeal, and found no reversible error. *Lammers v. State*, 330 Ark. 324, 954 S.W.2d 489 (1997). However, because Lammers was convicted of

capital murder and sentenced to life imprisonment without parole, the court examined the complete record under Ark. Sup. Ct. R. 4–3(h), and concluded that the trial court had erred in ruling Lammers's peremptory challenge of a middle-aged white male juror violated the requirements of *Batson v. Kentucky*, 376 U.S. 79 (1986). The court reversed and remanded this case for retrial on the *Batson* issue.

The State now files a timely petition for rehearing wherein it suggests that, in rendering this court's decision, the court failed to give proper consideration to the trial judge's findings when the trial court rejected Lammers's motion to strike juror Burdett. Upon careful study and review of the record, we believe the State's petition has merit.

During voir dire and in support of its position that juror Burdett should be seated, the State showed that (1) Lammers had used seven of his nine peremptory challenges on white males,[1] and (2) Lammers made the remark, "black individuals are less harsh on criminal defendants in Arkansas County than white persons." Considering Lammers's pattern of strikes and his discriminatory statement regarding race and gender when striking veniremen, the trial court found and ruled that the State had demonstrated a prima facie case of discrimination.

In this respect, this court has repeatedly held that the trial court is in a good position to determine whether the reason for exclusion was genuine or pretextual, and the review for reversal of a trial court's *Batson* ruling is whether the trial court's findings are clearly against the preponderance of the evidence. *Green*

---

[1] The trial judge found that seven out of the nine peremptory challenges used by Lammers were against white males, the other two against women. In a footnote in the original opinion, the court suggested the trial court was wrong in finding seven white males since Lammers employed only six challenges against white men before the venireman in question, Clifford Burdett, was chosen as the first alternate juror. However, the trial court was correct because Lammers's seventh challenge went against Burdett, and the trial court considered it when overruling Lammers's peremptory challenge. Whether a pattern of strikes was made as a result of six or seven peremptory strikes is insignificant, especially in view of Lammers's obvious discriminatory statement that black individuals are less harsh on criminal defendants than white persons.

*v. State*, 330 Ark. 458, 956 S.W.2d 849 (1997); *Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 87 (1997), quoting *Hernandez v. New York*, 500 U.S. 352 (1991) (where Supreme Court stated that deference to the trial court findings on the issue of discriminatory intent makes particular sense in this context because, as noted in *Batson*, the finding "largely will turn on an evaluation of credibility"); *Wooten v. State*, 325 Ark. 510, 931 S.W.2d 408 (1996), *cert. denied*, 117 S. Ct. 979 (1997). The Supreme Court has stated that the decisive question in a *Batson* ruling will be whether counsel's explanation for a peremptory challenge should be believed and the evaluation of counsel's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." *Hernandez*, 500 U.S. at 365; *see also Purkett v. Elem*, 514 U.S. 749 (1995) (per curiam) (noting that a trial judge may choose to disbelieve implausible or fantastic reasons tendered by counsel).

■ Here, the record clearly supports the trial court's findings and refusal to strike juror Burdett. Upon granting the State's petition for rehearing, the court holds no reversible error has been shown. Therefore, we affirm.

ARNOLD, C.J., BROWN and THORNTON, JJ., dissent.

RAY THORNTON, Justice, dissenting. Clint Lammers was convicted as an accomplice to capital murder and sentenced to life without possibility of parole. Because I believe he was deprived of a fair trial by the erroneous denial of his right to a peremptory challenge during jury selection, I respectfully dissent from the majority decision on rehearing to deny Lammers a new trial. In my view, the trial court erred in its interpretation and application of the law.

Late in the process of jury selection, Lammers exercised a peremptory challenge to excuse Clifford Burdett from service. The State objected to the use of the peremptory challenge on the basis of *Batson v. Kentucky*, 476 U.S. 79 (1986). The State's objection was premised on a novel approach that combined the elements of gender, age, and race; and the State persuaded the trial

court that the principles of *Batson* required that Lammers's peremptory challenge of Mr. Burdett, a middle-aged white male, be denied. The trial court denied the peremptory challenge and seated Mr. Burdett over Lammers's objection. The State made its objection in the following words:

> Your Honor, it is my understanding that *Batson* works both ways. It not only deals with race; it also deals with issues of gender. I believe I can show to the Court that . . . Mr. Burdett was stricken — stricken solely because he is a white male of middle age.

Following a discussion of *J.E.B. v. T.B. ex rel. Alabama*, 511 U.S. 127 (1994), relating to gender-based discrimination, Lammers inquired whether the objection to the peremptory challenge was based on gender. The State replied:

> Your Honor, although the — the case cited . . . does not specifically deal with the area of age, it would be both a gender-based and age-based discrimination. . . . I realize *J.E.B. v. Alabama* does not deal with the age issue, but we would make — make both a gender and age based discrimination argument. And, I guess, to a certain extent, based upon Mr. Green's [counsel for Lammers] arguments made against some of my peremptory challenges. Also, I believe Mr. Burdett is being stricken also because he is a white, middle-age male.

Mr. Green's arguments supporting his *Batson* objection to some of the State's frequent peremptory challenges to black potential jurors occurred at a much earlier point in the jury-selection process. Following the State's peremptory exclusion of Angela Silverman, a black female, and James Scaife, a black male, from service on the jury, the State peremptorily challenged Louis Berry, a black male, and the following exchange took place:

> *Mr. Green* [making a *Batson* objection]: It appears to me that the only reason he is being excluded by the State is the fact that he is an Afro-American. — his statements have been very appropriate and right down the line.

> *The State*: I am not . . . seeking his exclusion because of anything having to do with his color, simply because of my feelings or my beliefs about his ability to comprehend what we are dealing with today.

*The Court*: Mr. Green?

*Mr. Green*: Well, it's, from where I stand, from the defense's point of view, it's the fact that he is an Afro-American, and the fact that he does —; in the community here it is well known that Afro-Americans do have some tendency to be lesser inclined to convict someone to such a point as to give them a death sentence.

A careful reading of this exchange leads to the conclusion that Mr. Green was arguing to the court that the State was seeking to exclude Mr. Berry from the panel because the State had adopted a community belief that black jurors were less inclined to enter a death sentence. On the basis of this *Batson* challenge, Mr. Berry was seated.

Following this exchange twenty potential jurors were given voir dire examinations, and five jurors were selected before the next black male, Floyd Ice, was presented for consideration. After failing to have him excused for cause, the State exercised a peremptory challenge, and Lammers's *Batson* challenge was denied. Mr. Green did not specifically renew his earlier criticism of the State's racial motives during consideration of this peremptory challenge, and Mr. Ice was excluded from jury duty. Two white males and one white female were then excused for cause by the court before Lammers peremptorily challenged Mr. Burdett. Over Lammers's objection, Mr. Burdett was seated on the jury.

It is quite a stretch of Lammers's argument that the State was racially motivated in its peremptory challenge of Louis Berry to reach the majority view that, having made this argument against the invidious exclusion of black jurors by the State, Lammers had made a prima facie case against his own later peremptory strike of a white juror.

It is such a stretch that the State never contends that the peremptory challenge of Mr. Burdett should be denied on the sole basis of Mr. Burdett's race. To the contrary, when repeatedly asked for the basis of its *Batson* objection, the State consistently argues: "And it is our position he was stricken solely because of his

gender, and his age to a certain extent, and to a certain extent his race."

Clearly the *Batson* challenge to Lammers's peremptory strike could not be sustained solely on the basis of Mr. Burdett being white. Under our well-defined standards for evaluating *Batson* challenges, a prima facie case of discrimination must first be shown. *Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 321 (1997); *see also Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996). If a prima facie case is shown, the party seeking to exercise a peremptory challenge must give a neutral explanation for the strike. *Id.*

Here, Lammers pointed out that his peremptory challenges had been used to strike females and persons of all ages, and stated: "If it had been a black man, or if it had been a black woman, if [it] had been a white man, or if it had been white woman, would the, what he perceived and what he heard from where he sits, he would have excluded that person from the jury." This is a race-neutral explanation, and under the holdings of *Purkett v. Elem*, 115 S.Ct. 1769 (1995) (per curiam), the burden regarding discriminatory motivation remained upon the State, as the opponent of the strike, to demonstrate invidious discrimination.

The State thereupon attempted to show a pattern of strikes, which it argued related entirely to the age and gender of the veniremen who were peremptorily challenged by Lammers. During this sensitive inquiry into the age and gender of the challenged jurors, the State made no showing of any racial pattern of discrimination by the defendant Lammers. This may have been based upon a reluctance to open that door too wide, in view of the fact that of the State's five peremptory challenges, at least four were used against black veniremen.[1]

---

[1] This pattern of challenges supports Lammers's charge that the State had adopted the community belief that black jurors were reluctant to impose a death sentence. Lammers did not make any statement indicating any invidious discrimination against the selection of white jurors, but attacked the State's pattern of using peremptory challenges to exclude black veniremen.

The sensitive inquiry disclosed that the defendant Lammers had used peremptory challenges to strike two young males, three females, and four middle-aged males. However, in finding that a prima facie pattern of gender discrimination existed, the trial court miscounted the males and females, and stated:

> All right. Well, for the record I will note that out of nine strikes exercised by the defendant, seven of them were against white males. . . Only two of the nine strikes were against women. And under the ruling of *J.E.B.*, and in the absence of a better explanation or basis for the exclusion of Mr. Burdett, I will have to over-rule the peremptory challenge under the law.

The three females peremptorily challenged by Lammers were Paula Smith, Mary Hayes, and Carol Sells. We cannot guess whether the trial court would have found a prima facie case of gender discrimination if it had correctly counted three females, and four middle-aged males, but the trial court clearly erred in this basic count, an error which the majority endorses as being insignificant.

The one remaining element of the cumulative gender, age, and race objection to be considered is whether the trial court erred in interpreting the law by finding that age may be the basis for a *Batson* challenge to a peremptory strike. That is the issue on which this case was first decided, and remains the issue that should be determinative upon rehearing. This is an issue of law, and our review should be whether the trial court erred in interpreting and applying the correct law.

In numerous cases, we have held that age is a neutral criterion, and may be properly asserted as a race-neutral reason for making a peremptory challenge. *See Sonny v. Balch Motor Co., supra* (citing *United States v. Ross*, 872 F.2d 249 (8th Cir. 1989);

---

In that regard, the majority asserts that the statement "black individuals are less harsh on criminal defendants in Arkansas County than white persons" is a reflection of Lammers's racial bias. However, a careful review of the record reveals that those words were not used by Lammers's counsel. They appear in the State's argument at T. 1232, where they are attributed to Lammers by the State.

*United States v. Garrison*, 849 F.2d 103 (4th Cir. 1988); *People v. Mack*, 128 Ill.2d 231, 538 N.E.2d 1107 (1989)).

Here the trial court was not asked to find, and did not find, a prima facie case of racial discrimination. Further, the trial court miscounted the number of males and females for the purpose of ruling on the question of gender discrimination and applied an erroneous interpretation of the law with reference to the issue of discrimination on the basis of age. As a result of these errors, the trial court denied Lammers a peremptory challenge, which he had the right to exercise. This error should require a new trial, and I respectfully dissent.

ARNOLD, C.J., and BROWN, J., join in this dissent.